(No. 53879.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant,
v. DANNY LEE (Jerome Trosclair, Appellee).

*Opinion filed November 13, 1981.*

Tyrone C. Fahner, Attorney General, of Springfield, and Richard M. Daley and Bernard Carey, State's Attorneys, of Chicago (Melbourne A. Noel, Jr., and Mark L. Rotert, Assistant Attorneys General, of Chicago, and Marcia B. Orr and Robert J. Kaiser, Jr., Assistant State's Attorneys, of counsel), for the People.

Richard E. Gorman, of Chicago (Ronald R. Nosek, of Lombard, of counsel), for appellee Jerome Trosclair.

MR. JUSTICE SIMON delivered the opinion of the court:

The defendant's claim that he would be prejudiced by joint trial with his codefendants was not sufficiently substantiated to require severance. Because the trial judge was not specifically told how the defenses were antagonistic, the defendants' joint trial here was proper.

Defendants Jerome Trosclair, Danny Lee, and two others were charged in the circuit court of Cook County with murder for the execution-style slaying of Reginald Bell, Sr., attempted murder for a similar attack upon Darryle Sanders, and armed robbery and burglary. The evidence developed at trial by the testimony of witnesses other than Trosclair's codefendants disclosed that the four defendants invaded a party in an apartment, in search of a man called "Junior," after an earlier request to search the apartment had been rebuffed by the occupants. Once inside the apartment, Trosclair produced a gun and ordered some of the occupants—Stanley Watson, Mary Ann Watson and Dewana Beard—to lie on the floor near Darryle Sanders, who was sleeping. Others in the apartment scurried out the back door or hid in a pantry. Bell got out of the apartment but then returned for his son. After leading the boy to safety, Bell confronted the defendants and asked

them to take whatever they wanted but not to hurt anyone. Bell was ordered to join the four lying on the living room floor.

Unable to find their quarry, the defendants took jewelry, wallets, and items of clothing from those on the floor, as well as part of the apartment's component stereo system. Trosclair then gave his pistol to Lee and told Lee to "Kill them all." Upon learning that a pregnant woman was among those on the floor, Lee said that he would kill only two persons. He shot Bell and Sanders. All of the defendants then fled. Bell died and Sanders sustained injuries serious enough to confine him to the hospital for 9 months. Stanley and Mary Ann Watson each testified at trial about what took place and identified Trosclair and Lee.

At trial the four defendants had separate counsel. Lee answered the State's motion for discovery by claiming that he would offer, as a defense, the State's inability to prove him guilty beyond a reasonable doubt and the affirmative defenses, among others, of necessity and compulsion. Lee and another codefendant moved for severance. The record shows some confusion as to whether Trosclair joined in Lee's motion, but in any event Trosclair's attorney was not present when Lee's motion was heard and did not argue at that time for a severance. These motions for severance were denied. Trosclair answered discovery by claiming as a defense the State's inability to prove him guilty beyond a reasonable doubt.

On the morning of jury selection, Trosclair moved for severance. He claimed, without providing any more specific facts, that a codefendant had made statements which the State would use against Trosclair at trial and that his codefendants' defenses were antagonistic to his. In a hearing on the motion Trosclair's counsel said that he believed the codefendants would testify on their own behalf and implicate Trosclair. The court was not informed of what the substance of such testimony would be. The trial judge,

stating that there was only a "possibility" of adverse testimony, denied the motion.

During the opening statements, counsel for Trosclair promised that Trosclair would take the stand, tell why he did not commit the crime, and present an alibi. One of the codefendants testified that he was not in the apartment where the murders occurred but saw Trosclair and another man (who was carrying part of the stolen stereo) running outside the building in which the crime was committed. Trosclair asked for a mistrial after this testimony, but the motion was denied.

Trosclair renewed his motion for severance when Lee took the stand and testified that Trosclair had forced him to do the shooting. Lee testified that he feared Trosclair had another gun and would shoot him as well as the persons on the floor if Lee did not do as told. Trosclair declined to cross-examine Lee; he neither took the stand nor made a closing argument. The jury found the two confederates guilty of armed robbery and burglary and Lee and Trosclair guilty of murder, attempted murder, aggravated battery, battery, burglary, and three counts of armed robbery. The appellate court reversed Trosclair's convictions but affirmed those of his codefendants. (86 Ill. App. 3d 922.) The State sought, and was granted, leave to appeal Trosclair's case under Rule 315 (73 Ill. 2d R. 315).

Ordinarily a motion for separate trial of jointly indicted defendants is to be made before trial commences. *(People v. Rhodes* (1969), 41 Ill. 2d 494, 497; *People v. Anderson* (1909), 239 Ill. 168, 179-80.) The motion must demonstrate how the defendant is going to be prejudiced by proceeding with a joint trial. Mere apprehensions of prejudice are not enough. *(People v. Yonder* (1969), 44 Ill. 2d 376, 386.) The decision to grant a separate trial is within the sound discretion of the trial court, and will not be reversed absent an abuse of that discretion. Ill. Rev. Stat. 1977, ch. 38, par. 114—8; *People v. Canaday* (1971), 49 Ill. 2d 416, 424.

The general rule is that defendants jointly indicted are to be jointly tried unless fairness to one of the defendants requires a separate trial to avoid prejudice. (*People v. Lindsay* (1952), 412 Ill. 472, 480.) At least two varieties of prejudice can be readily identified. First, a defendant may be denied his constitutional right of confrontation if, in a joint trial, the State introduces the admission of a codefendant which implicates the defendant. (*Douglas v. Alabama* (1965), 380 U.S. 415, 419, 13 L. Ed. 2d 934, 937, 85 S. Ct. 1074, 1077.) Because the defendant cannot call the codefendant to the stand for cross-examination, either a separate trial should be ordered or the admission should be redacted to eliminate any references to the defendant. (*Bruton v. United States* (1968), 391 U.S. 123, 134 n.10, 20 L. Ed. 2d 476, 484 n.10, 88 S. Ct. 1620, 1626-27 n.10; *People v. Clark* (1959), 17 Ill. 2d 486, 490.) No admissions of codefendants were entered into evidence by the State against Trosclair, and consequently he did not suffer this kind of prejudice as a result of his joint trial.

Prejudice may also occur when a codefendant takes the stand to point a finger at the defendant as the real perpetrator of the offense. No confrontation problems exist because the defendant is free to cross-examine the new accuser. But the procedure may be unfair. For example, as the court observed in *People v. Braune* (1936), 363 Ill. 2d 551, 557, "The trial was in many respects more of a contest between the defendants than between the People and the defendants. It produced a spectacle where the People frequently stood by and witnessed a combat in which the defendants attempted to destroy each other." A severance may be ordered where the defendants cannot realistically be aligned on the same side, but care must be taken in such cases to insure that the nature of the defenses are truly inconsistent. See *People v. Brooks* (1972), 51 Ill. 2d 156, 166.

Trosclair claims that this case presents the latter situation. The paramount inquiry in such cases is whether the

defenses are so antagonistic that a severance is imperative to assure a fair trial. (*People v. Gendron* (1968), 41 Ill. 2d 351, 357.) There was no showing before trial that Trosclair's defense would be antagonistic to those of his codefendants. The conclusions set forth in his petition for a severance were no substitute for a detailed recitation of what his defense would be, what the codefendant's defenses would be, and how the two conflicted. (See, *e.g., People v. Braune* (1936), 363 Ill. 551, 553-54.) Trosclair failed to make such a showing here, even taking into account his answer to discovery. Without a detailed and specific showing of antagonism, there was no basis on which the judge could have determined whether Trosclair would suffer prejudice. There was no reason at that time to grant a separate trial.

The appellate court, though, felt that as the testimony unfolded the trial court should have seen the need for severance. Trosclair's position is that to accommodate those infrequent situations where the basis of the need for severance is unknown or could not be predicted before trial and the existence of antagonism becomes obvious for the first time during trial, relaxation of strict adherence to the rule that the motion for severance must come before trial is indicated. (Accord, *People v. Gendron* (1968), 41 Ill. 2d 351, 357.) While a strict rule makes sense where severance is based on the use of a codefendant's admission by the State (for there the statement is available to all concerned for examination and redaction before trial), problems may arise where the defendant fears that his codefendant will become his accuser at trial. Counsel is not always privy to a codefendant's trial strategy and may not know for certain whether the codefendant will choose to take the stand to implicate a defendant.

Even assuming that Trosclair's position is sound and that there would be a continuing right to move for severance after trial has begun, there was no error in refusing to

sever the trials here. At no point, not even after Lee had testified, did Trosclair detail the antagonisms or inconsistencies between his defense and those of his codefendants. His stated defense was a reliance on the State's inability to prove him guilty. The testimony of Trosclair's codefendants did not add to the State's case. While Lee placed Trosclair at the scene of the crime, Lee's testimony was merely cumulative, repeating the testimony already received from Mary Ann Watson and Stanley Watson. Had Trosclair offered an alibi defense, as his counsel promised to do in opening statements, perhaps there might have been a showing of inconsistency. But counsel's unfulfilled promise left Trosclair far short of an adequate showing. Because he offered no defense, the record shows no antagonism between the codefendants' testimony and Trosclair's defense. "It is incumbent upon a defendant, moving for a separate trial, to show to the trial judge how he would be prejudiced by a joint trial. If he fails so to do, he cannot, on review, complain of the action of the trial court in denying his motion." *People v. Meisenhelter* (1942), 381 Ill. 378, 388.

A defendant is required, in seeking a separate trial, to do more than simply move for severance. The defendant must actively and specifically point out the antagonism of the defenses and so demonstrate the prejudice which will be suffered from a joint trial. Trosclair did not do so, and the denial of his severance requests prior to and during trial were not abuses of discretion. Trosclair's conviction should not have been reversed.

The judgment of the appellate court is reversed, and the judgment of the circuit court of Cook County is affirmed.

*Appellate court reversed;*
*circuit court affirmed.*