THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JACKIE WILSON, Defendant-Appellant.

First District (5th Division)   No. 83—0773

Opinion filed September 30, 1987.

Steven Clark, of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Joan S. Cherry and Kevin Sweeney, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

This case has been remanded to us from the Illinois Supreme Court. Following a joint jury trial, defendant, Jackie Wilson, and his brother, Andrew Wilson, were found guilty of the murders and armed robberies of Chicago police officers William Fahey and Richard O'Brien on February 9, 1982. Defendant was sentenced to natural life imprisonment for the murders and concurrent terms of three years for the two armed robbery convictions. Andrew received concurrent terms of 30 years on his convictions for armed robbery and was sentenced to death for the murders.

On appeal, we held that the trial court committed prejudicial error by expressly refusing—in contravention of the decision in *People v. Zehr* (1982), 110 Ill. App. 3d 458, 442 N.E.2d 581, which was filed approximately two months before this trial and brought to the court's attention at the outset of *voir dire*—to ask the jurors certain questions tendered by defense counsel concerning whether they understood that defendant had a right not to testify and whether they would hold it against him or draw negative inferences if he failed to do so; and, noting that the appellate decision was subsequently affirmed by the supreme court in *People v. Zehr* (1984), 103 Ill. 2d 472, 469 N.E.2d 1062, wherein a majority of the justices agreed with the appellate court that "each of [the] questions [at issue] goes to the heart of a particular bias or prejudice which would deprive [the] defendant of his right to a fair and impartial jury" (103 Ill. 2d 472, 477, 469 N.E.2d 1062, 1064), we believed, and ruled, that it was necessary to reverse defendant's convictions and remand the

case for a new trial. We were not persuaded otherwise by the State's assertions of waiver by defendant or that the *voir dire* examination conducted by the trial court was in substantial compliance with *Zehr* or its additional argument that the rule enunciated in *Zehr* should be given only prospective application. However, the supreme court thereafter allowed the State's petition for leave to appeal and, in a supervisory order, reversed our judgment "applying *People v. Zehr* (1984), 103 Ill. 2d 472 retroactively" and remanded the case to us for consideration of those of defendant's contentions not addressed in the original appeal. *People v. Wilson* (1986), 112 Ill. 2d 567 (Simon, J., dissenting).[1]

The trial proceedings and evidence introduced thereat are set forth in detail in our original opinion and will be restated only to the extent necessary for an understanding of the issues to be resolved.

OPINION

In his supplemental brief, defendant urges us to reconsider his contention that the trial court erred in denying his motion to suppress his statement. It is his position that the supreme court's reversal of Andrew's conviction following its determination that Andrew's confession should have been suppressed as involuntarily given (*People v. Wilson* (1987), 116 Ill. 2d 29, 506 N.E.2d 571), supports his claim that his statement was, likewise, the involuntary product of physical and mental coercion by the police stemming from their beatings of him and of Andrew and his resultant fear of additional abuse.

After a careful reading of the supreme court's opinion in Andrew's appeal, we conclude that nothing therein warrants retraction of our original holding that the trial court did not err in finding that defendant's statement was voluntary. In ruling that Andrew's statement should have been suppressed, the supreme court made no factual findings regarding how, when or by whom the injuries Andrew undeniably sustained were inflicted but, rather, based its

---

[1]In his dissent, Justice Simon reiterated the views he expressed more fully in his special concurrence in *People v. Britz* (1986), 112 Ill. 2d 314, 493 N.E.2d 575, stating that reversal of our decision on the basis of the court's finding that its decision in *Zehr* did not apply retroactively was inappropriate and incorrect because irrespective of whether the supreme court opinion in *Zehr* was retroactive, the trial court was nevertheless obliged to follow, *i.e.*, give prospective effect to the appellate court's decision of the case which had been filed approximately two months before this trial commenced.

ruling solely on its determination that, as a matter of law, the State failed to meet its burden of proving they did not occur prior to his confession.

Noting at the outset the general rule that the burden on the State is to establish, by a preponderance of the evidence, that a defendant's confession was voluntary (116 Ill. 2d 29, 38, 506 N.E.2d 571, 574), the court went on to state that where it is evident that a defendant suffered injuries while in police custody and the only inquiry is when they were inflicted, the State must then show by clear and convincing evidence that they were not inflicted as a means of procuring a confession, a burden requiring more than mere denials by the State's witnesses that the confession was coerced (116 Ill. 2d 29, 40, 41, 506 N.E.2d 571, 575). The court distinguished the decisions relied upon by the State to support the trial court's ruling, observing that unlike those cases where either there was no medical corroboration of the occurrence of injuries or an adequate explanation for them was provided, it was conceded and/or clearly established by medical evidence that Andrew sustained approximately 15 separate injuries to his head, chest and legs; however, only his facial injuries were explained by the State. The court therefore concluded that the State had not met its burden of showing by clear and convincing evidence the absence of coercion in procuring the confession. 116 Ill. 2d 29, 41, 506 N.E.2d 571, 576.

■ This ruling in no way conflicts with or departs from the well-settled principle enunciated in *People v. La Frana* (1954), 4 Ill. 2d 261, 122 N.E.2d 583, and quoted by the *Wilson* court that " '[w]here the only evidence of coercion is the defendant's own testimony, and where this is contradicted by witnesses for the People, then of course the trial court may choose to believe the latter' " (*People v. Wilson* (1987), 116 Ill. 2d 29, 40, 506 N.E.2d 571, 575). As in the cases distinguished by the supreme court, defendant, unlike Andrew, produced no evidence apart from his own testimony that he incurred physical injuries while in police custody and, in view of the evidence—which he does not seriously contest—that he arrived at the police station at approximately 10 a.m. and, after being advised of his rights, made oral statements to the police and to the assistant State's Attorney between 10:15 and 11 a.m., respectively, and gave a written statement at 12:20 p.m. after being provided a lunch, we see no reason to overturn the trial court's determination that the State had met its burden of establishing a preponderance of the evidence that the statement was made voluntarily.

We turn then to defendant's contention that the trial court abused its discretion in refusing to grant his motion for a separate trial.

■■ ■ The general rule has long been that "defendants jointly indicted are to be jointly tried *unless fairness to one of the defendants* requires a separate trial to avoid prejudice." (Emphasis in original.) (*People v. Bean* (1985), 109 Ill. 2d 80, 92, 485 N.E.2d 349, 355; *People v. Lindsay* (1952), 412 Ill. 472, 107 N.E.2d 614.) A defendant moving for severance must state how he will be prejudiced by a joint trial, as mere apprehensions of prejudice are not sufficient (*People v. Lee* (1981), 87 Ill. 2d 182, 429 N.E.2d 461), but, in ruling on the motion, the trial court must, necessarily, make predictions as to the likelihood of prejudice occurring at trial, taking into account the papers presented, the arguments of counsel and any other knowledge of the case developed from the proceedings. (*People v. Daugherty* (1984), 102 Ill. 2d 533, 468 N.E.2d 969; *People v. Gibons* (1986), 149 Ill. App. 3d 37, 500 N.E.2d 517.) Furthermore, although ordinarily a motion for severance must be filed prior to trial, the trial court has a continuing duty at all stages of trial to order a severance if prejudice appears (*People v. Gibons* (1986), 149 Ill. App. 3d 37, 500 N.E.2d 517; *People v. Murphy* (1981), 93 Ill. App. 3d 606, 417 N.E.2d 759), and while the decision to order separate trials is within the sound discretion of the trial court, reversal may be ordered where there is an abuse of that discretion (*People v. Byron* (1987), 116 Ill. 2d 81, 506 N.E.2d 1247; *People v. Duncan* (1987), 115 Ill. 2d 429, 505 N.E.2d 307; *People v. Bean* (1985), 109 Ill. 2d 80, 485 N.E.2d 349; *People v. Daugherty* (1984), 102 Ill. 2d 533, 468 N.E.2d 969).

· Traditionally, there have been two primary forms of prejudice recognized by Illinois courts. The first occurs where the codefendants' defenses are so inconsistent or antagonistic that *one* of the defendants could not receive a fair trial if tried jointly with the other, in which case nothing short of severance will ensure a fair trial. *People v. Olinger* (1986), 112 Ill. 2d 324, 493 N.E.2d 579; *People v. Gibons* (1986), 149 Ill. App. 3d 37, 500 N.E.2d 517.

Second, a defendant may be denied his constitutional right of confrontation if, in a joint trial, the State introduces the extrajudicial admissions of a nontestifying codefendant which implicate the defendant. Because the defendant cannot call the codefendant to the stand for cross-examination, what is commonly referred to as a "Bruton problem" arises (*Bruton v. United States* (1968), 391 U.S. 123, 20 L. Ed. 2d 476, 88 S. Ct. 1620), and either a separate trial

should be ordered or the codefendant's admissions should be redacted to eliminate any references to the defendant (*Richardson v. Marsh* (1987), 481 U.S. ____, 95 L. Ed. 2d 176, 107 S. Ct. 1702). In 1979, a plurality of the justices of the supreme court in *Parker v. Randolph* (1979), 442 U.S. 62, 60 L. Ed. 2d 713, 99 S. Ct. 2132, carved out an exception to the *Bruton* rule and allowed use of the nontestifying codefendant's extrajudicial confession implicating the defendant, if (a) the defendant has also confessed and his confession sufficiently "interlocks" with that of the codefendant and (b) the jury is given cautionary instructions that a particular statement may be considered as evidence only as to its maker.[2]

In this case, defendant and Andrew each filed and argued a pretrial motion for separate trials. Andrew alleged that both of the two forms of prejudice discussed above would occur as a result of being tried jointly with defendant because he would deny the truth of his statement and claim, as he did in his motion to suppress it, that he made it only after and because of repeated beatings and torture by the police and that, in truth, he was not involved in the shootings, but, rather, was falsely accused by his brother and misidentified by the State's witnesses.

Defendant's pretrial grounds for severance were the potentiality of antagonistic defenses; that he would be denied his right of con-

---

[2]The *Parker* decision was recently reconsidered and overruled by the United States Supreme Court in *Cruz v. New York* (1987), 481 U.S. ____, 95 L. Ed. 2d 162, 107 S. Ct. 1714. Writing for the majority, Justice Scalia noted that the plurality in *Parker* understood *Bruton* to hold that the confrontation clause is violated only when introduction of a codefendant's confession is " 'devastating' " to the defendant's case and that where the defendant has himself confessed, " '[his] case has already been devastated' [citation]" and thus determined that cross-examination would yield little advantage (*Parker v. Randolph* (1979), 442 U.S. 62, 75, 60 L. Ed. 2d 713, 723, 99 S. Ct. 2132, 2140). The *Cruz* majority disagreed with this view, however, observing that it was "illogical, and therefore contrary to common sense and good judgment, to believe that codefendant confessions are less likely to be taken into account by the jury the more they are corroborated by the defendant's own admissions; or that they are less likely to be harmful when they confirm the validity of the defendant's alleged confession" (481 U.S. ____, ____, 95 L. Ed. 2d 162, 172, 107 S. Ct. 1714, 1719), and held that "where a nontestifying codefendant's confession incriminating the defendant is not directly admissible against the defendant [in accordance with the rule enunciated in *Lee v. Illinois* (1986), 476 U.S. 530, 90 L. Ed. 2d 514, 106 S. Ct. 2056, requiring independent indicia of its reliability], the Confrontation Clause bars its admission at their joint trial, even if the jury is instructed not to consider it against the defendant, and even if the defendant's own confession is admitted against him" (481 U.S. ____, ____, 95 L. Ed. 2d 162, 172, 107 S. Ct. 1714, 1719). See also *People v. Johnson* (1987), 135 Ill. App. 3d 652; *People v. Lincoln* (1987), 157 Ill. App. 3d 700.

frontation if the State were allowed to introduce testimony that Andrew made a prearrest statement to a State witness which contradicted his statement that he took no part in the crimes charged; and that because, unlike Andrew, he was not eligible for the death penalty, the questioning of the jurors concerning their attitudes toward the death penalty would cause them to be predisposed against him.

The pretrial motions for severance were denied, as were the numerous motions made throughout the proceedings for severance and/ or a mistrial in which counsel raised the original, as well as several additional, allegations of prejudice resulting from the joint trial.

The parties did not reargue this issue in the supplemental briefs filed after the reversal of Andrew's conviction;[3] however, in its original brief the State argued, *inter alia*, that defendant did not and cannot establish that he was prejudiced by a joint trial, because (a) Andrew's statement actually corroborated his own statement, which was admissible and on which he relied to support his claim that he did not participate in the crimes, and therefore negated the possibility of a *Bruton* problem, (b) Andrew's defense in no way incriminated defendant so as to be considered antagonistic, and (c) in any event, the jury obviously rejected that defense by finding Andrew guilty.

Initially, we note that in evaluating the propriety of the denial of a motion for severance, a reviewing court looks to the facts and circumstances which existed at the time it was denied (*People v. Daugherty* (1984), 102 Ill. 2d 533, 468 N.E.2d 969), although subsequent events frequently illustrate the prejudice which results when the motion is not granted at the earliest point (*People v. Bean* (1985), 109 Ill. 2d 80, 485 N.E.2d 349; *People v. Daugherty* (1984), 102 Ill. 2d 533, 468 N.E.2d 969.)

Here, the reasons expressly stated by the trial court for rejecting counsel's arguments and refusing to grant a severance were that because defendant's and Andrew's statements did not conflict, but, in fact, were "interlocking" in that they were substantially identical in most material respects, there was neither (1) antagonism between them nor, (2) under the *Parker* exception to the *Bruton* rule, any problems relating to the sixth amendment right to confrontation. Obviously, neither of these findings could have been made without the trial court's initially having determined that defendant's and

---

[3]Defendant did, however, file additional authority in support of his original argument.

Andrew's statements both met the first criterion of admissibility, *i.e.*, that they were voluntary—a determination found by the supreme court to be erroneous in regard to Andrew; and although the supreme court found it unnecessary to reach the issue of severance in Andrew's appeal, it is clear that its ruling that his confession was inadmissible completely negates the stated bases of the trial court's rulings as to the nonexistence of either a *Bruton* situation or antagonistic defenses.

■ Second, as stated in *People v. Byron* (1987), 116 Ill. 2d 81, 93, 506 N.E.2d 1247, 1252, and *People v. Bean* (1985), 109 Ill. 2d 80, 95, 485 N.E.2d 349, 356, the long-standing rule in Illinois is that "*any* set of circumstances which deprives a defendant of a fair trial is sufficient to require severance." (Emphasis in original.) (See also *People v. Braune* (1936), 363 Ill. 551, 2 N.E.2d 829.) We find the reasoning in the companion cases of *Bean* and *Byron* to be particularly instructive. Codefendants Bean and Byron were jointly tried for a variety of crimes, including murder, after the trial court's denial of their motions for severance. Bean had asserted the existence of antagonistic defenses as the grounds for his motion, arguing that Byron's defense strategy would be to attack him and place all the blame for the crimes on him. The primary basis of Byron's motion was that the evidence against Bean was so overwhelming that its introduction would be unavoidably and highly prejudicial to him. Relying on an alibi, Byron thereafter proceeded throughout the trial to accuse Bean of being the perpetrator of the crimes. They were both found guilty of all of the crimes charged and sentenced to death.

The supreme court reversed Bean's conviction on the ground the defenses were conflicting and antagonistic and, noting that Byron's strategy was to convince the jury of his own innocence by convincing them of Bean's guilt, determined that irreparable prejudice resulted to Bean which could only have been avoided by ordering a separate trial. In so ruling, the court characterized the State's argument, that because the defendants did not reciprocally blame each other the defenses were compatible, as "specious." *People v. Bean* (1985), 109 Ill. 2d 80, 95, 485 N.E.2d 349, 356.

Here, as in *Bean*, once it had been determined that his statement was admissible against him, defendant's only means of persuading the jury of his innocence was by convincing the jury that although he was with Andrew at the scene of the crimes, Andrew had acted alone in shooting and robbing the officers. Thus, Andrew, like Bean, was forced to defend himself against two accusers. In addition to the obvious prejudice therefrom, in view of the supreme court's

ruling that Andrew's own confession should not have been admitted, we must conclude that the admission of defendant's statement directly accusing Andrew of the crimes violated his constitutional rights under *Bruton*, which, we believe, could have been avoided only by granting Andrew a separate trial.

Similarly, with respect to Byron's appeal from the denial of severance, the State argued that (1) Byron had failed (a) to state specifically how he would be prejudiced by a joint trial, (b) to prove his defense was antagonistic to Bean's, or (c) to show that he was "overwhelmed" by the evidence against Bean; (2) that the defenses were in fact compatible because they did not consist of reciprocal accusations against each other, *i.e.*, that whereas Byron accused Bean, Bean did not testify and charge that Byron was the guilty party; and (3) that in any event, "an overwhelming abundance of evidence against a codefendant" has never been grounds for severance in this State.

Rejecting the State's arguments and ordering that Byron be given a new trial, the supreme court noted as it did in *Bean* that because of the conflicts between the defenses, "[t]he trial became more of a contest between the two defendants rather than between the People and each defendant" (*People v. Byron* (1987), 116 Ill. 2d 81, 93, 506 N.E.2d 1247, 1252), wherein the defense attorneys repeatedly attacked each other's clients and further held that the overwhelming volume of evidence against Bean may have misled the jurors and resulted in their being unable to fairly apply the evidence to respective defendants. The court also found to be without merit the State's argument that although Byron's attacks on Bean were prejudicial to Bean, nothing Bean did served to prejudice Byron, on the basis of the well-settled rule on which it had also relied in *Bean*, that "*any* set of circumstances which deprives *a* defendant of a fair trial is sufficient to warrant severance [and that] [t]here is no requirement that the prejudice must be reciprocal" (116 Ill. 2d 81, 93, 506 N.E.2d 1247, 1252).

■ Based on our interpretation of the supreme court's explanation and application of the law relating to severance, we are of the opinion that defendant was *not* required to allege or establish the same type of degree of prejudice as that anticipated and asserted by Andrew in order to also be entitled to a severance; and, as has always been recognized, the grounds on which severance may be warranted are not limited to the two most commonly asserted, *i.e.*, denial of the right to confrontation and antagonistic defenses (see, *e.g.*, *People v. Lee* (1981), 87 Ill. 2d 182, 187, 429 N.E.2d 461 ("at least

two varieties of prejudice can be readily identified")), but extend to *any* circumstances which would prevent a defendant from receiving a fair trial.

■ Furthermore, we, like the court in *Byron*, do not agree with the State's arguments or the trial court's determination that the defenses were not sufficiently antagonistic or conflicting to require a severance so as to ensure defendant a fair trial.

As previously noted, the court expressly found that because defendant's and Andrew's statements were not conflicting there was no antagonism between them. In other words, the court ruled on the basis of the *statements*—one of which was subsequently ruled to be inadmissible—rather than on the proposed theories of defense. From the several colloquies among counsel and the trial court before and during trial, it appears that the court inverted the generally sound premise that where codefendants' statements materially conflict so, usually, will their defenses, to conclude that, conversely, where the pretrial statements are "interlocking" there can be no true antagonism between the defenses presented at trial. Although there are, of course, innumerable cases finding the extent to which statements are consistent to be relevant to the question whether their admission poses potential *Bruton* problems, we have found none holding that the existence of interlocking statements in itself negates the possibility of antagonistic defenses.

Additionally, we do not believe that the facts in this case are supportive of such a proposition. The State argues, as it did in *Byron*, that while defendant, through his statement, attempted to exculpate himself by directly accusing Andrew of the crimes, Andrew did not reciprocally place the blame for them on defendant, but merely asserted as his defense theory that he was mistakenly identified as one of the men involved in the shooting incident. As was held in *Byron*, however, the defenses need not consist of reciprocal accusations to be inconsistent and antagonistic. Moreover, the State's argument oversimplifies, and thus ignores, what the record clearly reveals, which is that the crux of Andrew's defense theory— intended to countermand the devastating effects of a fraternal accusation—was that defendant and two of the State's witnesses who implicated him in these murders were fellow gang members; that it was not he but one of them who was with defendant when the shootings occurred; and that defendant thereafter voluntarily gave the police a statement consisting of a fabricated version of events so to protect his friends and himself—in other words, that defendant's statement, on which defendant relied to exculpate himself, was a lie.

Counsel for Andrew laid the foundation for this theory in his opening statement and later attempted to develop it by asking Derrick Martin about his gang affiliation, whether Edgar Hope and Kojak (Donald White) were members of the Disciples street gang, and whether he knew defendant was also a Disciple. Although the trial court sustained defendant's objection to the last question and thereafter granted, over the strenuous objections of Andrew's attorney, his (defendant's) motion *in limine* barring the introduction of any additional evidence relating to gang activities or affiliations, counsel for Andrew nevertheless expounded on that theory in his closing argument, referring to defendant as "a Disciple, a crook [and] a friend of gang members." In his impassioned speech, from which we have deleted, for the sake of continuity, the repeated objections by defendant's attorney and the State along with the trial court's rulings thereon, counsel for Andrew further argued:

"You heard the evidence, ladies and gentlemen, of where Jackie was *** [w]ith Derrick Martin. ***. You heard from Derrick Martin, you know where he was. You heard where Jackie was. You know who those people were. ***. I'm only commenting that Mr. Martin said where they were. Kojak's house. Derrick Martin admitted he was a gang member, an El Rukn. Nevertheless Jackie wasn't about to get his tail kicked *** [a]t the police station. *** He went along with the program. *** What I argue [is that] *there's no evidence that Jackie Wilson was beaten. There is evidence that he agreed to make a statement.* It's reasonable for you to infer that if Jackie Wilson knew he could have identified that person. It's also reasonable for you to infer that he identified his own brother knowing that his own brother didn't do it. That [it's] unlikely in Jackie's mind, at least, that his brother would ever be convicted. And it certainly takes the heat off *whoever was in that car with him.* You don't live long by the way, if you testify against gang members. [Defendant's attorney] is not a foolish lawyer." (Emphasis added.)

■ Thus, while Andrew's defense did not, and could not by its very nature, consist of as pointed or specific an accusation against defendant as defendant's accusation against him, the fact remains that in order for the jurors to have accepted both theories of defense, they would have had to come to the conclusion that defendant's statement was a lie as to all matters relating to Andrew's guilt but truthful as to all matters relating to his own innocence. In other words, when examined side by side, it becomes clear that the

essence of each defense was that the other was a lie, and that in attempting to advance their respective positions, counsel for Andrew and defendant—as they predicted at the time of their motions to sever and pointed out on repeated occasions at trial—were frequently forced to take diametrically opposed positions on various evidentiary matters and to structure their arguments in such a way as to attack each other's clients, the above-quoted portion of closing argument being only one of several such instances.[4]

As to the State's arguments that, in any event, defendant was not prejudiced by Andrew's defense because in finding Andrew guilty the jury obviously rejected it in its entirety, it appears likely that the jury found Andrew guilty because of the overwhelming abundance of evidence against him, the bulk of which came through his own improperly admitted confession, defendant's accusations against him and questionable testimony of Tyrone Sims,[5] and that, as suggested in *Byron*, the jury was unable, despite the court's limiting instructions, to disregard or at least compartmentalize that evidence in considering defendant's theory of defense and determining his guilt or innocence. In summary, we find that the repeated motions for severance sufficiently delineated the manner in which each defendant would be and,

---

[4]Another such instance concerned the admissibility of the testimony of the State's key witness, Tyrone Sims, who had undergone hypnosis the day after the shooting to assist him in recalling the license plate number of the car driven by the officers' assailants. Andrew argued that Sims' recollection of the shooting and the post-hypnotic identification Sims made of him and defendant was induced and/or influenced by the hypnosis and requested the court to either bar it in its entirety or, at the very least, conduct a hearing to determine the extent of Sims' prehypnotic recollection and allow the introduction of expert testimony both at that hearing and at trial regarding the effects hypnosis may have had thereon. Defendant's attorney joined the State in opposing Andrew's motion and thereafter elicited on cross-examination of Sims that defendant appeared to be in a state of shock during the shootings.

Following a lengthy discussion of the issue in Andrew's appeal, the supreme court adopted the approach taken by a number of other States, which is that prior to its admission the proponent of such testimony must establish the nature and extent of the witness' prehypnotic recollection and that the parties should be permitted to present expert testimony regarding the potential effects of hypnosis, and then found that because there was a dispute regarding the extent of Sims' prehypnotic recollection the State must demonstrate to the trial court upon retrial of his case that the post-hypnotic identification he made was anchored in his prehypnotic memory—a determination which, the court suggested, would be facilitated by the introduction of expert testimony on the effects of hypnosis; and further, that he also be permitted to present at trial expert testimony to assist the jurors in understanding the potential effects of hypnosis on Sims' testimony. *People v. Wilson* (1987), 116 Ill. 2d 29, 48-49, 506 N.E.2d 571, 579-80.

[5]See Footnote 4.

as we believe the facts illustrate, were prejudiced by a joint trial and that the denial of those motions, on the basis of an erroneous ruling and faulty reasoning constituted an abuse of discretion necessitating reversal of defendant's convictions and remandment of his case for a new trial separate from that of his brother.

■ Defendant also contends that it was prejudicial error for the trial court to allow the State to introduce evidence that on the day of the shootings there was a warrant outstanding for his arrest in connection with the robbery of a camera store for the purpose of showing a motive for the killings, *i.e.*, to avoid arrest.

In response to an identical argument made by Andrew, the supreme court agreed that this evidence was improperly admitted, noting that "the State did not produce any evidence that the defendant knew that the warrant existed, or even that the officers were arresting the defendant pursuant to the warrant." The court further stated that "[t]he existence of the arrest warrant does not by itself show that the defendant was trying to avoid apprehension. Unless the defendant knew about the warrant or knew that the officers were attempting to arrest him, the existence of the warrant does not establish anything about the defendant's state of mind. [Citations.]" (*People v. Wilson* (1987), 116 Ill. 2d 29, 52, 506 N.E.2d 571, 581.) With respect to defendant, we note that in addition to the grounds asserted by Andrew's attorney for barring testimony regarding the warrants, counsel for defendant informed the court that defendant had already been arrested for that robbery, had appeared in court on the charge and was out on bond pending his next court appearance. In view thereof, evidence of the warrant should not have been permitted.

Defendant also contends that he is entitled to a hearing pursuant to *Batson v. Kentucky* (1986), 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712, to determine whether the State exercised its peremptory challenges so as to exclude blacks from the jury, and that in his closing argument, the prosecutor distorted Tyrone Sims' testimony and improperly invited the jury to draw unreasonable and unfounded inferences therefrom. However, in the light of our determination that his case should be remanded for a new trial, these are issues that need not be considered in this opinion.

For the reasons stated, we reverse defendant's convictions and remand this case for a new trial.

Reversed and remanded.

LORENZ and MURRAY, JJ., concur.