THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JEFFREY COLLINS *et al.*, Defendants-Appellants.

First District (1st Division)   Nos. 1—86—3008, 1—86—3081 cons.

Opinion filed June 30, 1989.

36

Michael J. Pelletier and Barbara Kamm, both of State Appellate Defender's Office, Jeffrey Haas, and Sue Augustus, all of Chicago, for appellants.

Cecil A. Partee, State's Attorney, of Chicago (Inge Fryklund and Gael M. O'Brien, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE MANNING delivered the opinion of the court:

The defendants, Jeffrey Collins (Collins) and Samuel Hayes (Hayes), were jointly indicted for the August 4, 1982, murder of Eddie McKeever (McKeever). Prior to trial, both defendants requested severance on the basis of antagonistic defenses and other forms of prejudice. Both motions were denied after a ruling by the trial court that Hayes' statement would be redacted to eliminate any references to Collins. A jury trial followed. After the first few State witnesses testified, Collins moved for a mistrial due to the denial of the motion for

severance on the basis of antagonistic defenses, and Hayes joined in the motion. The motion was denied. The jury found both Collins and Hayes guilty of McKeever's murder, and the court sentenced them to 40 years' imprisonment. Both defendants appeal, and their appeals have been consolidated for review.

On appeal, both defendants argue that the trial court abused its discretion in denying their motions for severance based on antagonistic defenses. The defendant Collins also contends that the trial court committed reversible error when it barred his cross-examination of the assistant State's Attorney who took Hayes' statement. The defendant Hayes additionally argues: (1) the trial court violated his sixth amendment right of face-to-face confrontation in allowing the statement of his nontestifying codefendant to be admitted at trial; (2) he was denied a fair trial because he was not allowed to testify about prior threats and acts of violence against him by Collins and Alfonso Pinex (Pinex); and (3) the case should be remanded for a hearing to determine if the prosecutor purposefully excluded jurors on the basis of race.

Prior to trial both defendants executed jury waivers for any potential death penalty sentencing hearings. Thereafter, a jury was selected. Fifty-six prospective jurors were questioned; four jurors challenged by the State were black; two jurors challenged by the defendants were black, and two jurors excused for cause were black. The final racial composition of the sworn jury included three black jurors and one black alternate.

During opening statements, each defense counsel argued that the codefendant and/or Pinex were the killer(s) of McKeever and not his respective client.

Next, Deborah Knox testified that she was with the victim during the late evening hours of August 3, 1982. McKeever offered to get chicken from Harold's Chicken Shack and then rode his bicycle a few blocks away to Harold's Chicken Shack. She testified that about 30 to 45 minutes later, she heard three gunshots, then a pause, then one more gunshot—all appearing to come from the same direction McKeever had gone.

The State then established that McKeever was shot at the corner of 90th and Ashland at about 12:30 a.m., on August 4, 1982. Thereafter, various State witnesses testified that the victim died of multiple gunshot wounds, that three bullets recovered from McKeever's body were probably fired from the same .32 caliber firearm, and there was a through-and-through bullet to his chin.

Next, Assistant State's Attorney Tom Roche testified that on June 6, 1985, Collins gave him a written and tape-recorded statement. The

court allowed the witness to publish the statement and play the tape to the jury. Collins' statement indicated the following scenario of events. On August 4, 1982, he was driving his sister's car. Pinex, Mark Pollet and Hayes were passengers in the car with him. As he parked the car to go to the liquor store, Collins and his passengers saw McKeever riding his bike with a bag of Harold's chicken. Hayes and Pinex got out of the car, and Pinex kicked McKeever off the bike. Collins saw Pinex and Hayes shoot McKeever about five or six times. They ran back to the car, and he drove to a park and dropped off Pinex and Hayes. Collins and Pollett then drove off.

· Assistant State's Attorney James Bigoness testified that he first spoke to Hayes on June 3, 1985. On the following day, he obtained a written statement from Hayes which was substantially similar to his oral remarks. Hayes' redacted court-reported statement was published to the jury.

In the statement, Hayes said that on the afternoon of August 3, 1982, he attended a Disciples gang meeting in the basement of the home of Pinex, where a group of 50 to 55 discussed various matters, including shooting McKeever. He also stated that McKeever was a member of a rival gang—the Blackstones. At that time, he had a loaded .22 caliber and a loaded .38 caliber gun with him. After the meeting at Pinex's request, Hayes went to the store at which he worked to look for bullets. Later that evening, Hayes entered a car in the vicinity of 90th and Ashland Streets with Pinex, Collins and Mark Pollet. Collins was driving. They drove around for a while, went to a club, and drove around some more. They spotted McKeever on his bike near 91st and Ashland, drove ahead of him, and turned the corner. Pinex got out of the car, hid behind a wall, and fired four or five shots at McKeever as he appeared around the corner. Hayes stated he stepped out of the car and fired his .22 caliber once at McKeever's face. They got back into the car and drove off. The out-of-court statements of Collins and Hayes were very similar except for the following differences. Collins had stated he was driving to the liquor store when Pinex and Hayes spotted McKeever, got out of the car, knocked him off the bike and fired shots at him. Hayes had stated the group was looking for some Stones to beat up when Mark Pollet spotted McKeever. Pinex got out of the car, hid behind a wall and shot four or five times at McKeever with a .32 caliber gun as he appeared around the corner. Hayes then stepped out of the car with one foot and fired again, aiming the .22 caliber gun at the victim's face.

The court allowed Hayes' counsel to cross-examine Assistant State's Attorney Bigoness. However, after a sidebar, the court refused

to allow counsel for Collins to cross-examine Bigoness, ruling the questions counsel intended to ask were beyond the scope of direct examination and improper.

The parties then stipulated that if Tyrone Britton had been called as a witness, he would have testified that on April 29, 1982, he was with the victim, Eddie McKeever, when they were approached and shot by Collins. Britton and McKeever both testified against Collins at a preliminary hearing on May 18, 1982, regarding the April 29, 1982, shooting incident. After that stipulation, the State rested.

Ricky Collins, brother of defendant Collins, testified that he got Collins a job and encouraged him to return to school. Collins rested.

Prior to Hayes' testimony, the court agreed with the State and ruled he was precluded from testifying about any threats made to him prior to August 4 since he had failed to give the State notice of a compulsion defense.

Defendant Hayes then testified on his own behalf. On direct examination, Hayes stated he knew both Collins and Pinex from the neighborhood. His testimony was either different from or added to his written statement in the following respects: (1) he was afraid of Pinex and Collins; (2) he was walking down the street when Collins demanded he come over to the car; (3) he was forced into the car by Collins; (4) he got out of the car because he was told to do so; and (5) he aimed his .22 caliber gun at the wall behind McKeever and fired once. He also testified that on the evening of August 2, 1982, he was beaten by Pinex, Collins and two others. Hayes stated he did not voluntarily give his statement to Bigoness but was encouraged to do so because the assistant State's Attorney needed someone to say that they shot McKeever with a .22 caliber gun. He stated that he was told if he said this he would not be charged.

After objections from the State, the court refused to allow Hayes to testify further on the basis of its earlier ruling that he was precluded from raising a compulsion defense when he failed to disclose it in his answer to the State's discovery.

On cross-examination by the State, Hayes further testified that some parts of the statement he gave the assistant State's Attorney were not true: (1) he had a .38 caliber gun with him on August 4; (2) Mark Pollet was in the car; (3) "Maybe if we saw someone on the street, we were going to beat them up"; and (4) Mark Pollet shouted out, "[T]hat was McKeever."

Counsel for Collins was permitted to cross-examine Hayes, but at the State's request was limited to asking about Collins only.

Initially, we must determine whether the trial court erred when it

denied defendants' motions for severance based on antagonistic defenses.

■■ The general rule is that jointly indicted defendants will be tried together (*People v. Strayhorn* (1965), 35 Ill. 2d 41, 219 N.E.2d 517; *People v. Lindsay* (1952), 412 Ill. 472, 480, 107 N.E.2d 614, 618), unless fairness to one of the defendants requires a separate trial to avoid prejudice. (*People v. Lee* (1981), 87 Ill. 2d 182, 187, 429 N.E.2d 461, 463.) There are two common examples of prejudice which dictate when jointly indicted defendants should be tried separately. The first example, known as the *Bruton* problem, occurs when one defendant has made out-of-court admissions that implicate a codefendant. Where these statements are introduced into evidence, even with limiting instructions to the jury not to consider the statements against the codefendant, the codefendant's sixth amendment right of confrontation can be violated. *Bruton v. United States* (1968), 391 U.S. 123, 20 L. Ed. 2d 476, 88 S. Ct. 1620.

The second form of prejudice occurs and mandates a severance when defendants present defenses that are so antagonistic that it is unfair to try them together. *People v. Daugherty* (1984), 102 Ill. 2d 533, 542, 468 N.E.2d 969, 971; *People v. Braune* (1936), 363 Ill. 551, 2 N.E.2d 839.

■■ ■ The defendant who believes he will be prejudiced by a joint trial with a codefendant may request severance by pretrial motion. (Ill. Rev. Stat. 1987, ch. 38, par. 114—8; *People v. Daugherty* (1984), 102 Ill. 2d 533, 468 N.E.2d 969.) "The motion must demonstrate how the defendant is going to be prejudiced by proceeding with a joint trial. Mere apprehensions of prejudice are not enough." (*People v. Lee* (1981), 87 Ill. 2d 182, 186, 429 N.E.2d 461.) The trial judge, in ruling on the motion, must make a prediction about the likelihood of prejudice at trial, taking into account the papers presented, the arguments of counsel, and any other knowledge developed from the proceedings. (See *People v. McMullen* (1980), 88 Ill. App. 3d 611, 614, 410 N.E.2d 1174.) The decision whether to grant a motion to sever is discretionary with the trial court and will not be reversed absent an abuse of discretion. *People v. Bean* (1985), 109 Ill. 2d 80, 93, 485 N.E.2d 349, 355; *People v. Canaday* (1971), 49 Ill. 2d 416, 424, 275 N.E.2d 356.

In the case at bar, before trial both defendants moved by written motion for severance. Collins' attorney asserted his defense was antagonistic to Hayes' and that Hayes' statement would implicate him, resulting in a possible *Bruton* problem. Additionally, Collins' attorney argued he would stand by his out-of-court statement, denying all knowledge of the planning and participation in the acts of the murder,

that Pinex and Hayes were the murderers, and he was an uninvolved witness. He did not testify at trial. Thus, his defense remained the same.

Before trial, Hayes' attorney contended that he expected Collins' testimony and defense would be the same as his pretrial statement. This was antagonistic to his defense because he did not shoot at or kill McKeever. He further argued at trial that he would repudiate his out-of-court statement and present evidence that Collins and Pinex had threatened him, that Collins was responsible for planning the murder, and that Pinex had killed McKeever. During the trial, on direct and cross-examination, Hayes' defense remained consistent with the details outlined in the pretrial severance motion.

During the hearing on the motions, each respective counsel contended his client would be prosecuted by his codefendant in addition to the State. The court denied the motions, ruling that references to Collins in Hayes' statement would be redacted.

The court, in redacting all references to Collins from Hayes' statement, attempted to cure any potential prejudice to Collins, and thus avoid the problem of confrontation in regard to the codefendant's pretrial statement. (See *People v. Johnson* (1986), 144 Ill. App. 3d 997, 495 N.E.2d 633.) However, similar to the *Bean* case, this only solved part of the problem and did not address the issue of antagonistic defenses. On its facts, this case is similar to *People v. Braune* (1936), 363 Ill. 551, 2 N.E.2d 839, *People v. Daugherty* (1984), 102 Ill. 2d 533, 468 N.E.2d 969, and the companion cases of *People v. Bean* (1985), 109 Ill. 2d 80, 485 N.E.2d 349, and *People v. Byron* (1987), 116 Ill. 2d 81, 506 N.E.2d 1247, where our supreme court determined that severance was warranted where the trial became more of a contest between the defendants than between the State and an individual defendant.

In *Braune*, the defendant was found guilty of manslaughter. Prior to trial, he filed a written petition for severance, alleging that the two defendants' defenses were conflicting and antagonistic. The other defendant also filed a motion arguing the first defendant would testify and he would be disadvantaged because he was unable to cross-examine him. Both motions were denied. The supreme court was concerned that the trial became a contest between the defendants. The trial "produced a spectacle where the People frequently stood by and witnessed a combat in which the defendants attempted to destroy each other." (citing *Braune*, 363 Ill. at 557.) Similar to this case, where on more than one occasion the State argued to the court that a codefendant's counsel's remarks or line of questioning was improper or should be stricken because he or she was creating an inference and pointing the

finger at the other, and the codefendant should not prosecute the defendant for the crime.

In *Daugherty*, each of the two codefendants made a statement that he was present at the scene of the crime but blamed the victim's death on the other. Similar to this case, the trial judge ordered the statement redacted.

In *Bean* and *Byron*, the supreme court recognized the long-standing rule in Illinois that any set of circumstances which deprives a defendant of a fair trial is sufficient to require severance, citing *Braune*. In the companion cases of *Bean* and *Byron*, codefendants were jointly tried for murder. Both moved for severance, and the trial court denied both motions. Bean had argued that Byron's defense strategy would be to attack him and place all the blame for the crimes on him. Byron asserted that the evidence was overwhelming against Bean, and its introduction would be unavoidably and highly prejudicial to him. The supreme court reversed Bean's conviction on the ground the defenses were antagonistic, noting that Byron's strategy was to convince the jury of his own innocence by convincing them of Bean's guilt.

In this case, the trial court was first made aware of the defendants' intentions to blame each other prior to trial. Even though Hayes did not directly place the blame on Collins as the shooter, introduction of his out-of-court statement and his subsequent testimony indicated he sought to prove Collins was the mastermind of the murder. On appeal, the State argues this case is distinguishable from *Daugherty* because the defendants did not "place the blame" on each other. However, in *Bean* the supreme court ruled a similar argument by the prosecution was "specious" and rejected it. *Bean*, 109 Ill. 2d at 95.

The hostility defense counsel had predicted in fact manifested during the opening statements. In his opening statement, Collins' attorney asserted:

> "Jeffrey Collins is not a murderer. Samuel Hayes and Alfonso Pinex who are not charged presently in this courtroom are murderers. They shot the guns. They shot the guns into the body of Eddie McKeever, and they are the ones who are guilty. Samuel Hayes made a statement to the police. He confessed. He said he shot him, not Jeffrey. And who shot Eddie McKeever? Who did it, Alfonso Pinex and Samuel Hayes did."

Similarly, in his opening statement, Hayes' attorney argued:

> "Jeffrey Collins is not Samuel Hayes' friend. The reason that Jeffrey Collins and Alfonso Pinex had to kill Eddie McKeever was the fact that he was a witness in that case. Samuel Hayes is

as much a victim of Jeffrey Collins and Alfonso Pinex as was Eddie McKeever."

Following opening statements and testimony by the State's first witnesses, defense counsel for Hayes moved for severance or mistrial. The judge made some comments on the opening statements and indicated that he had never been confronted with this situation before and did not want to declare a mistrial after two days. The State argued that this case was distinguishable because the defendants did not blame each other during the severance hearing, and hence, their statements were the same, indicating Hayes was the shooter and that Collins was present. The court denied the motions.

In a similar case, this court has held that a severance was warranted where the antagonism manifested itself in opening statements. (*People v. Wilson* (1986), 161 Ill. App. 3d 995, 505 N.E.2d 812.) Additionally, there is a continuing duty to grant a severance if prejudice appears during the trial. *People v. Poree* (1983), 119 Ill. App. 3d 590, 595, 456 N.E.2d 950.

The antagonism against Hayes became more apparent after opening statements and the introduction of Collins' statement that Hayes and Pinex were the murderers. Hayes was further prejudiced because he could not cross-examine Collins, but Collins in cross-examining him attempted to implicate him by eliciting admissions that he had a motive and by further discrediting his testimony in order to prove he was the killer. Also, Hayes was repeatedly attacked in closing arguments:

"[Y]ou know Alfonso Pinex and Samuel Hayes shot and killed Eddie McKeever; that they are the ones who are guilty; Jeff is not guilty; that he wasn't part of a plot or a plan ***. Besides, the evidence that you heard showed at least three motives for the murderers, Hayes and Pinex, to kill; which they did, not Jeff. Sam Hayes *** is an admitted armed robber and thief, and I submit, a partner in this murder."

Collins was similarly prejudiced. Hayes took the stand, and contrary to his contention, was allowed to testify about his fear of Collins and Pinex. He attempted to prove he cooperated because he was acting under threats of force and compulsion. But for the State's insistence that he not be allowed to testify further, and the court's ruling limiting this line of testimony, Hayes may have in fact pointed the finger at Collins and placed the blame on him. Nevertheless, Hayes' opening statement, coupled with his testimony and closing remarks, was prejudicial to Collins. In Hayes' closing remarks, his counsel argued:

"Sam didn't know that Eddie McKeever was going to be a witness against Jeffrey Collins. Only Jeffrey Collins knew that.

Sam had nothing to do with it. He didn't know why he was in the car. He told you that he didn't know that they were going out to kill Eddie McKeever. And whether he (Jeffrey Collins) was a gang member or not, he still had a motive to shoot Eddie McKeever once before and he had a motive again this time."

The court reached its ruling to deny severance during the trial on the basis that the statements interlocked in various aspects, and therefore, no antagonism existed. This court has recently rejected this contention in *People v. Wilson* (1986), 161 Ill. App. 3d 995, 505 N.E.2d 812. In *Wilson* this court stated:

"From the several colloquies among counsel and the trial court before and during trial, it appears that the court inverted the generally sound premise that where codefendants' statements materially conflict so, usually, will their defenses, to conclude that, conversely, where the pre-trial statements are 'interlocking' there can be no true antagonism between the defenses presented at trial. Although there are, of course, innumerable cases finding the extent to which statements are consistent to be relevant to the question whether their admission poses potential *Bruton* problems, we have found none holding that the existence of interlocking statements in itself negates the possibility of antagonistic defenses." 161 Ill. App. 3d at 1005.

■ More recently, the United States Supreme Court in *Cruz v. New York* (1987), 481 U.S. 186, 95 L. Ed. 2d 162, 107 S. Ct. 1714, rejected the position that *Bruton* did not require the codefendant's confession to be excluded because the defendant had himself confessed, and his confession "interlocked" with his codefendant's. The court stated, "in fact, *** 'interlocking' bears a[n] *** inverse relationship to devastation[, since] *** a codefendant's confession that corroborates the defendant's confession significantly harms the defendant's case." (481 U.S. at 192, 95 L. Ed. 2d at 171, 107 U.S. at 1718.) We believe the *Cruz* analysis is applicable to the case at bar in that it may be illogical and contrary to good judgment for a trial court to conclude, preliminarily without more, that codefendant confessions are less likely to be taken into account by the jury the more they interlock and are corroborated by the defendant's own admission or that they are less likely to be harmful when they confirm the validity of the defendant's confession.

Neither do we find the State's other arguments persuasive. The State relies on several cases in which our supreme court has upheld the denials of motions for severance based on antagonistic defenses. However, we believe the circumstances of this case are distinguishable.

In *People v. Yonder* (1969), 44 Ill. 2d 376, 256 N.E.2d 321, the codefendants expressed "mere apprehensions" that each defendant would incriminate the other. In *People v. Lee* (1981), 87 Ill. 2d 182, 429 N.E.2d 461, the court was not informed of what the substance of the testifying defendant's testimony would be, nor how it would be antagonistic to the moving defendant's defense.

We find the case at bar to be similar to the *Daugherty* line of cases: "When codefendants have each made statements implicating the other, but professing their own innocence, it is almost inevitable that their lines of defense at trial will become inconsistent and antagonistic and severance is necessary to forestall that result and ensure a fair trial." (*Daugherty*, 102 Ill. 2d at 544.) Particularly on point is *People v. Gibons* (1986), 149 Ill. App. 3d 37, where our court in reliance on *Daugherty* held the trial court had a continuing duty to grant a severance at any stage of the proceedings. *Gibons* determined that the trial court was obligated to grant severance upon repeated motions by the defendant, as well as at the opening statement when it became clear that codefendants would present antagonistic defenses, implicating him as the initiator of charged murders and as compelling and manipulating their participation. *Gibons*, 149 Ill. App. 3d at 49-50.

■ For the foregoing reasons, we hold that the trial court's denial of the defendants' motions for severance on the basis of antagonistic defenses resulted in substantial prejudice to both defendants and constitutes reversible error. Hayes' and Collins' convictions are therefore reversed, and the cause is remanded for new and separate trials. Because of our disposition on this issue, we do not address the remaining arguments on appeal.

■ Finally, we believe that the evidence at trial was sufficient for the trier of fact to conclude that defendants were guilty beyond a reasonable doubt. This does not mean we are making a finding as to defendants' guilt or innocence which would be binding on retrial, but rather our consideration of the sufficiency of the evidence admitted at trial will remove the risk of subjecting defendants to double jeopardy. See *People v. Taylor* (1979), 76 Ill. 2d 289, 391 N.E.2d 366.

For the foregoing reasons, defendants Collins' and Hayes' convictions are reversed and their causes remanded for new and separate trials.

Judgment reversed and remanded, with directions.

CAMPBELL and BUCKLEY, JJ., concur.