THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
JOHN THREZZY, Defendant-Appellant.

First District (1st Division)    No. 85—2202

Opinion filed November 2, 1987.

James J. Doherty, Public Defender, of Chicago (Linda J. Seeley, Assistant Public Defender, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Thomas V. Gainer, Jr., Robert M. Podlasek, and Jeremy C. Schwartz, Assistant State's Attorneys, of counsel), for the People.

JUSTICE BUCKLEY delivered the opinion of the court:

Following a jury trial, defendant John Threzzy was convicted of delivery of over 30 grams of cocaine (Ill. Rev. Stat. 1983, ch. 56½, par. 1401(a)(2)), possession of a controlled substance with intent to deliver (Ill. Rev. Stat. 1983, ch. 56½, par. 1401(a)(2)), armed violence (Ill. Rev. Stat. 1983, ch. 38, par. 33A—2), and conspiracy with intent to deliver (Ill. Rev. Stat. 1983, ch. 38, par. 8—2(a); ch. 56½, par. 1401(a)(2)). Judgment was entered only on the delivery charge, and defendant was sentenced to 15 years in the penitentiary. On appeal, defendant contends that his convictions should be reversed on the ground that he was denied the opportunity to be represented by the counsel of his choice and that his motion for severance was improperly denied. For the following reasons, we reverse and remand for a new trial.

At trial, the prosecution presented the testimony of Agent John Mueller, Agent Art Martinez, Agent Pat Lawton, Scott Ando, Officer Roland Carlson, and Arrila Pora, which established the occurrence of the following events. On May 18, 1984, defendant telephoned Agent Mueller and agreed to sell him 10 ounces of cocaine at $1,750 per ounce. Consequently, at 5 p.m. that evening, Agents Mueller and Martinez drove to Clark and Pratt to meet defendant. When they arrived, defendant was standing on the southeast corner of the intersection conversing with his codefendant, Robert Ameniero. Mueller and Martinez pulled into a nearby McDonald's parking lot, at which time defendant approached the agents and told them his "connect" wasn't home, but he would be back at 7:30 p.m. to complete the transaction.

Mueller and Martinez returned to the scene at 7:30 p.m., and once again, defendant was standing on the corner of Clark and Pratt. At about 8 p.m., Ameniero's car arrived, and defendant leaned in the passenger window momentarily. Shortly thereafter, the two drove away, and defendant returned by foot minutes later. Upon his return, the agents approached defendant, and defendant told them that he only had eight ounces of cocaine, so the price would be $14,000. Subsequently, Martinez and defendant entered Martinez' vehicle, while Mueller stood by the passenger window. At that point, defendant produced a red bag containing a white powder, later determined to be 232.1 grams of cocaine, and handed it to Mueller. Mueller then activated an electric button which alerted the surveillance team to move in and arrest defendant. Martinez frisked defendant and uncovered a knife in defendant's waistband. Another police officer arrested Ameniero.

At trial, Ameniero denied transacting a drug sale with defendant, although he conceded that he drove defendant around for 15 minutes on the day in question. Ameniero's father, Jose Ameniero, testified that his son had known defendant since 1963.

Immediately prior to trial, on June 17, 1985, defendant requested that a private attorney replace the assistant public defender who had been representing him. The trial court denied the request, noting that defendant had already had three private attorneys, each of whom had withdrawn from the matter, that the public defender's office had capably represented defendant for six months, that the cause had been before the trial judge on numerous occasions and was one of the oldest on his docket, and that defendant's choice of private counsel was not prepared to proceed to trial.

Also prior to trial, defendant and Ameniero both moved for severance. Ameniero's attorney claimed that he would attempt to prove at trial that defendant had many sources for narcotics, that defendant wrote notes to Ameniero admitting his guilt in the offense but denying Ameniero's participation, and that the two codefendants' meeting on the day in question was "innocuous." He made the following offer of proof regarding defendant's sources of drugs: (1) On May 17, the day before the offense, the agents received a 10-ounce drug sample from defendant; (2) on May 14, defendant told the agents the sample came from his source in Benton, Illinois; (3) on April 30, defendant told the agents that Enrique Lopez had a cocaine warehouse in Benton; and (4) on April 25, the agents met with defendant and negotiated eight kilos. Ameniero's attorney stated that such proof would be elicited through the cross-examination of one of the agents, the result of which would "have a significant prejudicial effect on Mr. Threzzy at a joint trial." He further stated that Ameniero's defense at trial would be "I didn't do it and he did." The trial court denied Ameniero's offer of proof on the ground it was not relevant, as well as Ameniero's second offer of proof which purported to show that defendant was a con man who misled people. As a result, severance was ruled unnecessary.

With respect to defendant's motion for severance, the trial court considered the threshold question to be whether the evidence that Ameniero sought to introduce would be admitted. According to the court, defendant's notes and the evidence of defendant's sources of narcotics on other occasions were inadmissible, while the photographs showing a prior relationship between the two codefendants were innocuous and possibly relevant. Thus, the court also denied defendant's motion for severance, stating that the case would be tried on

what allegedly occurred on May 18, and the trial began.

In his opening statement, Ameniero's counsel referred to defendant as a "drug dealer" who had various sources for his cocaine. Defendant's objection to this remark was overruled. Moreover, on cross-examination of Agent Mueller, over defendant's objection, Ameniero's counsel elicited that the agents had prior contact with defendant regarding the sale of 10 ounces of cocaine. Counsel also asked Mueller about defendant's source, Enrique Lopez, from Benton, Illinois, the two- or three-month investigation of defendant, and about a meeting in which defendant allegedly offered to cure Mueller's friend of cancer for $135,000. Finally, in closing argument, Ameniero's attorney accused defendant of the offense by stating, "We all know [Threzzy's] windbreaker was loose fitting because we all know what was under there ***. Point is Threzzy got in the car with the drugs. He had them under the jacket." Ameniero's attorney further implied in the argument that defendant was a dealer when he commented that defendant wanted the agents to think "he's got a source in a shiny, new car so he can do this kilo deal next week."

The jury ultimately acquitted Ameniero, but convicted defendant. On appeal, defendant argues that the trial court's denial of his motions for severance and substitution of counsel warrant reversal of his convictions.

■■ We initially address defendant's contention that the trial court's denial of his motion for severance deprived him of a fair trial. Generally, " 'defendants jointly indicted are to be jointly tried *unless fairness to one of the defendants* requires a separate trial to avoid prejudice.' " (*People v. Bean* (1985), 109 Ill. 2d 80, 92, 485 N.E.2d 349, 355, quoting *People v. Lee* (1981), 87 Ill. 2d 182, 187, 429 N.E.2d 461, 463.) In ruling on a severance motion, the court is to make a prediction about the likelihood of prejudice at trial, taking into account "the papers presented, the arguments of counsel, and any other knowledge of the case developed from the proceedings." (*People v. Daugherty* (1984), 102 Ill. 2d 533, 541, 468 N.E.2d 969, 973; *People v. Wilson* (1987), 161 Ill. App. 3d 995, 514 N.E.2d 812.) When evaluating the propriety of the denial of a motion for severance, a reviewing court looks to the facts and circumstances which existed at the time it was denied (*People v. Daugherty* (1984), 102 Ill. 2d 533, 468 N.E.2d 969), although subsequent events may illustrate the prejudice which results when the motion is not granted at the earliest point. (*People v. Bean* (1985), 109 Ill. 2d 80, 485 N.E.2d 349.) While the decision to order separate trials is within the sound discretion of the trial court, reversal may be ordered where there is an

abuse of that discretion. *People v. Byron* (1987), 116 Ill. 2d 81, 506 N.E.2d 1247; *People v. Wilson* (1987), 161 Ill. App. 3d 995, 514 N.E.2d 812.

■■ ■ Illinois recognizes that when codefendants' defenses are so antagonistic to each other that one of the codefendants cannot receive a fair trial jointly with the others, severance is required. (*People v. Bean* (1985), 109 Ill. 2d 80, 485 N.E.2d 349.) Here, this standard was met, as Ameniero's attorney tried repeatedly, in his opening statement, in his cross-examination of Agent Mueller, and in his closing argument, to destroy defendant's case. By depicting defendant as a drug dealer who had major outside sources, Ameniero bolstered his own innocence. This strategy resulted in prejudice to defendant which could have been avoided by separate trials. Clearly, the trial judge was made aware of his potential prejudice through Ameniero's offers of proof at the hearing on the severance motions. While the trial judge ruled such evidence inadmissible with respect to defendant at the pretrial hearing, much of it nevertheless was elicited at trial by Ameniero's attorney.

In this regard, the present case is analagous to *People v. Bean* (1985), 109 Ill. 2d 80, 485 N.E.2d 349, where the supreme court granted defendant Bean a new trial due to the denial of a severance from his codefendant Byron, despite the fact that "an overwhelming volume of evidence was presented" against Bean. (See *People v. Byron* (1986), 116 Ill. 2d 81, 93, 506 N.E.2d 1247, 1252.) In so doing, the court stated:

> "Byron's defense was clearly entirely antagonistic to Bean's. In a word, Byron's defense consisted of the contention that Bean was the murderer and Byron was not even there. Byron's counsel elicited admissions from witnesses which implicated Bean and were totally irrelevant to Byron. Finally, Byron's closing argument labeled Bean as a murderer." (*People v. Bean* (1985), 109 Ill. 2d 80, 96, 485 N.E.2d 349, 357.)

Just as the defendant in *Bean*, defendant in the instant case should have been tried separately, for he too experienced similar prejudice by his codefendant's counsel.

In response, the State, citing *People v. Daugherty* (1984), 102 Ill. 2d 533, 468 N.E.2d 969, and *People v. Zambetta* (1985), 132 Ill. App. 3d 740, 477 N.E.2d 821, argues that antagonistic defenses must be symmetrical for severance. The State contends that since defendant's defense was lack of proof, whereas Ameniero's defense was "I didn't do it and he did," the two defenses are compatible, and severance was therefore not required. The supreme court in *People v. Bean*

(1985), 109 Ill. 2d 80, 485 N.E.2d 349, makes clear, however, that codefendants need not reciprocally blame one another to warrant a severance. Rather, "*any* set of circumstances which deprives *a* defendant of a fair trial is sufficient to require severance." (*People v. Bean* (1985), 109 Ill. 2d 80, 95, 485 N.E.2d 349, 356.) As noted above, such circumstances are present here.

The State also maintains that even if the two defenses were antagonistic, denial of defendant's severance motion was proper because the evidence elicited by Ameniero's counsel was merely cumulative of the other evidence presented at trial. We disagree. The questions regarding the agents' investigation of defendant, defendant's offer to cure Agent Mueller's friend of cancer for $135,000, and defendant's drug source were presented only on cross-examination of Agent Mueller, and not through direct testimony.

Given our ruling that defendant was deserving of a separate trial, we need not consider whether defendant was entitled to substitution of counsel. We note, however, that the evidence at trial was sufficient for the trier of fact to conclude that defendant was guilty beyond a reasonable doubt. This does not mean we are making a finding as to defendant's guilt or innocence which would be binding on retrial, but rather our consideration of the sufficiency of the evidence admitted at trial will remove the risk of subjecting defendant to double jeopardy. *People v. Taylor* (1979), 76 Ill. 2d 289, 391 N.E.2d 366; *People v. Jackson* (1986), 150 Ill. App. 3d 1, 501 N.E.2d 802.

For the foregoing reasons, the judgment of the circuit court of Cook County is reversed and this cause is remanded for a new trial.

Reversed and remanded.

CAMPBELL and MANNING, JJ., concur.