THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. KENNEDY BLOUNT *et al.*, Defendants-Appellants.

First District (2nd Division)   No. 1—87—1335

Opinion filed September 30, 1991.—Modified on denial of rehearing November 5, 1991.

Cecil A. Partee, State's Attorney, of Chicago (Renee Goldfarb and Kenneth T. McCurry, Assistant State's Attorneys, of counsel), for the People.

Michael J. Pelletier and Debra R. Salinger, both of State Appellate Defender's Office, of Chicago, for appellant Michael Dotson.

Randolph N. Stone, Public Defender, of Chicago (Donald S. Honchell, Assistant Public Defender, of counsel), for appellant Kennedy Blount.

JUSTICE DiVITO delivered the opinion of the court:

Following a joint jury trial, defendants Kennedy Blount and Michael Dotson were convicted of murder. (Ill. Rev. Stat. 1985, ch. 38, par. 9—1(a)(1).) Dotson was sentenced to imprisonment for 40 years and Blount for 30 years. In this appeal, they assert numerous grounds for reversal, principally that the circuit court erred in denying their motions for severance of their trial.

Early on March 14, 1985, Frederick Poe was found dead in the lobby area of the Henry Horner housing project at 140 N. Wood Street in Chicago. Dotson, Blount, and Dotson's brother Robert were subsequently charged with the murder of Poe. Prior to trial, both Dotson and Blount made motions to suppress statements they had made. Following a hearing, the circuit court denied both motions.

Dotson and Blount, as well as Robert Dotson, also made motions for severance of their trial. All three alleged that their defenses were antagonistic to each other. Dotson argued his defense would be alibi and would be in direct conflict with Blount's statement to the police and an assistant State's Attorney. He contended that if Blount did not testify, he would not have an opportunity to confront Blount concern-

ing his prior statement. Blount argued that his statement was a result of police coercion and that he had retracted it. Moreover, he contended that Dotson's statement was clearly hostile and antagonistic to his case. Ruling that the statements were interlocking, the circuit court denied Dotson's and Blount's motions for severance. Because Robert Dotson did not make a statement, the court severed his case; his separate trial is not relevant to this appeal.

At trial, Tyrone Jackson testified on behalf of the State. On March 14, 1985, at 1:45 a.m., he left his apartment and went to 140 N. Wood to visit his girl friend, Norma Jean. When he was 30 feet from the rear entrance of the building, he heard five shots. He continued walking to the building and pulled on the door handle. Unable to open it initially, he grabbed it with both hands and "snatched it open." He then was "face to face" with Blount, who had been holding the door on the inside. Blount told Jackson to "get the fuck out of there." After Blount ran off, Jackson entered the building.

Jackson heard someone moaning and walked through an interior door, where he saw Poe lying in the hallway. He heard a noise and turned around to see Robert and Michael Dotson. Jackson asked them, "What is up[?]" and Michael Dotson pulled a gun, which he pointed at Jackson's head. Robert said, "Kill the motherfucker and let's get it over with and let's go." Michael Dotson "clicked" the gun five times, but it did not fire. Both Robert and Michael Dotson then ran out the back door.

Jackson stated that he "knocked on everybody's door" trying to get help, but no one came out. When he heard police cars, he ran home because he was afraid. He did not tell anyone what he had seen until the next morning, when he told his mother. After talking to Officer William Freeman, Jackson viewed a lineup and photographs. He identified Blount and Dotson, as well as Robert Dotson.

On cross-examination, Jackson conceded that he did not knock on the door to apartment 103, nor did he go up to his girl friend's apartment in the building to tell her what had happened. He admitted that he had charges pending against him, but denied that he was hoping for a deal in consideration for his testimony.

Officer William Freeman, a Chicago police officer, testified that he was assigned to the Henry Horner Boys Club and that on March 14, 1985, he met with Jackson. Jackson told him that he saw Blount and Michael and Robert Dotson shoot Poe. Freeman related the information to Officer Charles Toussas, who later arrested Michael Dotson.

Assistant medical examiner Dr. Shaku Teas, who performed the autopsy, testified that Poe had suffered two through-and-through gun-

shot wounds. The cause of his death was a gunshot wound of the back.

According to his statement given to police after his arrest, sometime after 7 p.m. on March 13, 1985, Dotson got off a bus at the intersection of Washington and Damen in Chicago. He saw his brother Robert and cousin Blount playing basketball. All three were members of the "Disciples" street gang. They went to Dotson's sister's apartment, where Robert told Dotson that he had been in a fight with some "Stones," another gang. Robert said he wanted to do something about it, and Blount was talking about revenge. Both Blount and Robert had guns. Blount gave Dotson a .357 magnum, which Dotson unloaded and put in his pocket.

Blount, Dotson, and Robert Dotson then went to 140 N. Wood; Dotson went to protect his brother from "something stupid." Robert and Blount went to the back door, while Dotson walked around to the front. When Dotson was about five or six steps from the front door, he saw and heard Blount fire five or six shots. When Dotson got by the door, someone came running toward him. Dotson pulled his gun, pointed it at the person, a male black, and clicked it; the person then ran away. Thereafter, Dotson threw the gun in the fire lane and went home.

At trial, Dotson testified that he was at home with his wife, Betty, at the time of the shooting. He acknowledged knowing Poe but denied getting into a fight with him or killing him. He stated that he had learned from his sister Margaret that Poe had died. Dotson maintained that his statement to the police was not true; he had given it because he had been afraid for his life and the police had "led him through it."

According to Blount's statement to the police after his arrest, it was Robert Dotson who suggested that they shoot some Stones. Blount had no gun, but both Robert and Michael Dotson did. The three went to the Banner Lounge, where they saw Poe leaving. They followed him to 140 N. Wood, where Robert went in first to see if Poe was inside. He came out a minute later and said "we got them, man."

The three then went inside the building. Blount remained by the door, while Robert and Michael Dotson went into the hallway. Robert shot once, but Blount did not know at whom he was shooting. Dotson shot six times in the same direction, followed by Robert shooting five more times. They all ran off, and Robert and Dotson told Blount that they had shot Poe. Blount did not testify at trial and presented no evidence.

Betty Dotson, Michael Dotson's wife, testified for Dotson that, on the evening of March 13, 1985, Michael was home with her and her two children. The landlord came over for a couple of hours to repair the hot water heater. Between 9 and 10 p.m., Michael left for about 25 minutes to go to the store, but then returned home and remained there all night.

In rebuttal, the State called Clara Mae Dotson, Dotson's mother, who testified that on March 13, 1985, Michael lived with her at 827 N. Francisco. Both Michael and his brother Robert left the house separately around 4 or 5 p.m. They returned at approximately 8 p.m. the same evening and were there when she awoke at 8:30 or 9 a.m. the next day.

After the jury returned verdicts of guilty of murder against both defendants, Dotson filed a motion for new trial based on newly discovered evidence. The circuit court denied the motion.

I

Dotson contends that the circuit court erred in denying his motion for a severance on two grounds: (1) the denial of his motion violated the principles enunciated in *Cruz v. New York* (1987), 481 U.S. 186, 95 L. Ed. 2d 162, 107 S. Ct. 1714, and (2) Blount's theory of defense was antagonistic to his. For reasons that follow, we agree that Dotson's case should have been severed from Blount's and that reversal of his conviction is necessary.

Dotson initially argues that his sixth amendment right of confrontation was violated when his nontestifying codefendant's statement was introduced at their joint trial. The State responds that Blount's statement possessed sufficient indicia of reliability and that any error in its admission was harmless.

■■ The United States Supreme Court held in *Cruz* that under the confrontation clause, a defendant's rights are violated when the confession of his nontestifying codefendant implicating the defendant is admitted at their joint trial. This is so even where defendant's own interlocking confession is admitted against him. Consistent with *Bruton v. United States* (1968), 391 U.S. 123, 20 L. Ed. 2d 476, 88 S. Ct. 1620, the Court stated that limiting instructions to the jury would not cure the violation.

The Court, focusing on the reliability of a codefendant's statement, stated:

"Quite obviously, what the 'interlocking' nature of the codefendant's confession pertains to is not its *harmfulness* but rather its *reliability*: If it confirms essentially the same facts

as the defendant's own confession it is more likely to be true. Its reliability, however, may be relevant to whether the confession should (despite the lack of opportunity for cross-examination) be *admitted as evidence* against the defendant ***.'' (Emphasis in original.) *Cruz*, 481 U.S. at 192-93, 95 L. Ed. 2d at 171, 107 S. Ct. at 1719.

Illinois followed *Cruz* in *People v. Lincoln* (1987), 157 Ill. App. 3d 700, 510 N.E.2d 1026, holding that it was error not to grant a severance to three defendants who made interlocking confessions which were introduced at their joint trial, where none of them testified. The *Lincoln* court stated:

> "Severance, therefore, is now mandated whenever a codefendant's statement interlocks with the defendant's statement, which he denies the truth of at trial, because the admission of the codefendant's corroborating statement is so devastating to the defendant's defense as to deny him a fair trial." (*Lincoln*, 157 Ill. App. 3d at 705.)

As in *Lincoln* and *Cruz*, the admission of Blount's statement was devastating to Dotson. Blount's statement was admitted and Blount did not testify, leaving Dotson with no opportunity to cross-examine him.

In *People v. Duncan* (1988), 124 Ill. 2d 400, 530 N.E.2d 423, the Illinois Supreme Court reaffirmed Illinois' long-standing sensitivity to the dangers of using a nontestifying codefendant's statements. The *Duncan* court stated that in cases such as the one at bar, the court must make a choice between severance, nonuse of a nontestifying codefendant's admissions, or redaction to eliminate all reference to the implicated defendant. *Duncan*, 124 Ill. 2d at 412.

The court in the instant case failed to exercise any of these options, resulting in the violation of Dotson's sixth amendment right to confrontation. Because of this error, Dotson's case must be reversed and remanded.

Another basis supporting reversal is found in Dotson's contention that he was prejudiced by Blount's antagonistic defense. The general rule is that defendants jointly indicted are to be jointly tried unless fairness to one of the defendants requires a separate trial to avoid prejudice. (*People v. Lee* (1981), 87 Ill. 2d 182, 187, 429 N.E.2d 461.) However, where the defenses of the codefendants are so antagonistic to each other that one of the defendants cannot receive a fair trial jointly with the other, severance is required. *People v. Bean* (1985), 109 Ill. 2d 80, 93, 485 N.E.2d 349; *People v. Daugherty* (1984), 102 Ill. 2d 533, 468 N.E.2d 969.

The decision to grant or deny a severance is within the sound discretion of the circuit court and will not be reversed absent an abuse of that discretion. (*People v. Harris* (1988), 123 Ill. 2d 113, 159, 526 N.E.2d 335.) A motion for severance must be made before trial begins and must demonstrate how the defendant will be prejudiced by proceeding with a joint trial. (*Lee*, 87 Ill. 2d at 186.) Mere apprehensions of prejudice are not enough. *People v. Smith* (1988), 172 Ill. App. 3d 94, 108, 526 N.E.2d 849.

■ Prior to trial, both Dotson and Blount repeatedly told the court that they would be presenting antagonistic defenses. Blount originally stated that he would assert an alibi defense, but at trial, chose to neither testify nor put on witnesses. Dotson informed the court that he intended to plead alibi, which he did, and which was in direct conflict with Blount's statement to police which inculpated him.

A similar situation was presented in *Daugherty*, where two defendants were jointly tried for and convicted of murder and armed robbery. Each had made statements professing his innocence and blaming the other. Although the prosecutor stipulated that he would not use either of the statements at trial, the supreme court reversed and remanded the case. In finding that the circuit court's denial of defendant's motion for severance was an abuse of discretion, the court stated:

"When codefendants have each made statements implicating the other but professing their own innocence, it is almost inevitable that their lines of defense at trial will become inconsistent and antagonistic and severance is necessary to forestall that result and ensure a fair trial. In such cases, the hostility between the codefendants is likely to surface at trial whether or not they each take the stand themselves." (*Daugherty*, 102 Ill. 2d at 544.)

This is precisely what occurred in the instant case with respect to Dotson. His theory of defense at trial was that his statement was false and that he was at home at the time of the shooting. The antagonism which the *Daugherty* court sought to prevent was brought out during closing arguments, where Blount's attorney stated:

"How can you [h]old a 16-year old boy responsible for two adults with guns? How's he supposed to stop them?

\* \* \*

Kennedy never saw Fred Poe. He never came within 50 yards of Fred Poe. According to Tyrone Jackson, both of his hands were on the door. So there was no gun in his hand, and if you believe that two adults would somehow lack the courage,

either act in the heat of passion or to act consistent with a plan to commit murder; that they would rely on him for courage, I can't accept that. If the stor[y] is as they have portrayed it, that the two Dotsons had the guns and they made up their minds, *could Kennedy have stopped them? Do you believe that? Was he [Blount] responsible for two adults [Michael and Robert Dotson] at the age of 16 years old. He [Blount] wasn't responsible, no. No way.*" (Emphasis added.)

Certainly at this time, if not before, the antagonism facing Dotson was evident and a severance was required. The court has a continuing duty at all stages of trial to grant a severance if prejudice is apparent. *People v. Murphy* (1981), 93 Ill. App. 3d 606, 417 N.E.2d 759.

The circuit court committed reversible error in not granting Dotson's motion for severance, as Blount's theory, which Dotson was unable to test, was antagonistic. Thus, because Dotson was denied his right to a fair trial, his conviction must be reversed and his case remanded for a new trial.

Because of our resolution of his case, other issues raised by Dotson need not be addressed. Those issues are unlikely to recur at his retrial or may be adequately addressed by the circuit court prior to retrial, such as whether his prior conviction for mob action was for a felony or misdemeanor offense and therefore properly used for impeachment purposes.

## II

Blount contends that the circuit court erred in denying his motion for severance. He argues that Dotson's defense was antagonistic to his and, therefore, separate trials were required. The State responds that the two defenses were not antagonistic and that the circuit court properly denied Blount's motion for severance.

Two types of possible prejudice can result from a joint trial; first, "a defendant may be denied his constitutional right of confrontation if, in a joint trial, the State introduces the admission of a codefendant which implicates the defendant." (*People v. Lee*, 87 Ill. 2d at 187.) In the present case, Blount does not specifically assert that his right of confrontation was denied; we note, however, that Blount had the opportunity to cross-examine Dotson and, thus, was not denied that sixth amendment right.

As stated earlier, Dotson presented an alibi defense at trial, maintaining that he was home with his wife at the time of the shooting. Blount's attorney did not cross-examine Dotson, though he was given the opportunity to do so. Blount did not testify at trial. The State in-

troduced his statement, in which he acknowledged being at the scene but denied having a gun, and in which he stated that Dotson and his brother shot Poe.

In *Nelson v. O'Neil* (1971), 402 U.S. 622, 29 L. Ed. 2d 222, 91 S. Ct. 1723, the United States Supreme Court held:

"Where a codefendant takes the stand in his own defense, denies making an alleged out-of-court statement implicating the defendant, and proceeds to testify favorably to the defendant concerning the underlying facts, the defendant has been denied no rights protected by the Sixth and Fourteenth Amendments." (402 U.S. at 629-30, 29 L. Ed. 2d at 228, 91 S. Ct. at 1727.)

That holding is applicable to Blount's case. Dotson took the stand, maintained that his statement to the police was untrue, and then presented an alibi defense which in no way inculpated Blount. Blount therefore suffered no harm.

The second form of possible prejudice from a denial of severance occurs when "a codefendant takes the stand to point a finger at the defendant as the real perpetrator of the offense" (*People v. Lee*, 87 Ill. 2d at 187); however, "codefendants need not reciprocally blame one another to warrant a severance" (*People v. Threzzy* (1987), 163 Ill. App. 3d 180, 185, 516 N.E.2d 573). Blount maintains that, although Dotson proffered an alibi defense, Dotson's defense was antagonistic to his because Dotson accused Blount by arguing that "Dotson was not responsible for the crime committed by defendant Blount."

Contrary to his assertion, Blount suffered no antagonism. Because Dotson asserted an alibi defense, the antagonism which *Daugherty* and *Bean* sought to prevent was nonexistent. (*People v. Cole* (1985), 131 Ill. App. 3d 36, 475 N.E.2d 620.) Not once during trial did Dotson accuse Blount of Poe's murder; rather, Dotson swore that his statement to police was untrue and he maintained his innocence by offering an alibi defense. It is true that Dotson's attorney contended, as an alternative argument, that even if the jurors accepted Dotson's statement to police, his statement was insufficient to establish his accountability; however, Dotson's attorney did not ask the jury to accept Dotson's statement, nor did she urge the jury to find that Blount was the offender. The record does not reflect that Blount was in any way prejudiced by Dotson's alibi defense.

Because Blount was not confronted with Dotson's dilemma of a nontestifying codefendant's statement implicating him, without the ability to rebut the accusations against him or to test their truthful-

ness, and because Blount was not prejudiced by any hostility in Dotson's defense, we conclude that the circuit court did not err in denying Blount's motion for severance.

We reject, too, Blount's assertion that, consistent with holdings such as *People v. Byron* (1987), 116 Ill. 2d 81, 506 N.E.2d 1247, and *People v. Wilson* (1987), 161 Ill. App. 3d 995, 515 N.E.2d 812, a third type of prejudice affected his right to a fair trial. He refers to the holding in those cases that "*any* set of circumstances which deprive[s] a defendant of a fair trial is sufficient to secure reversal." (Emphasis in original.) In carefully examining the record in this case and in applying the *Byron/Wilson* rationale, we conclude that Blount's contention is without merit. Mindful of the specific requirement that no reciprocal accusations need be present to conclude that the defenses of Blount and Dotson were inconsistent and antagonistic, we do not find in this case the type of prejudice which warranted reversal in both *Byron* and *Wilson*.

### III

Blount also maintains that he was denied a fair trial because of improper closing arguments by the prosecutors.

Blount asserts that in both the opening and rebuttal portions of their closing arguments to the jury, the prosecutors referred to his failure to call certain defense witnesses. Specifically, Blount points to a portion of the State's argument in which the prosecutor questioned why Blount had not called any witnesses to corroborate his claim that he was beaten at the police station in order to coerce a statement. Blount also complains of a portion of the State's argument in which the prosecutor allegedly commented upon Blount's failure to present evidence contradicting the testimony of Tyrone Jackson. Blount's objections to these statements were overruled by the circuit court.

Although we recognize that "a defendant has no duty to call anyone as a witness in his case" (*People v. Moore* (1972), 9 Ill. App. 3d 231, 232, 292 N.E.2d 42), we find that the State's comments did not rise to the level of reversible error. In the instant case, Blount's attorney attempted to characterize Blount's statement as coerced by beatings; however, despite the injection of the issue of police coercion, there was no evidence presented at trial which suggested that the police forced Blount to make his statement. Consequently, the State's comments upon Blount's failure to present such evidence was a proper response to the issue of police brutality raised by Blount. See *People v. Lyles* (1985), 106 Ill. 2d 373, 390, 478 N.E.2d 291.

Further, the State's comments upon Blount's failure to present evidence contradicting Jackson's testimony that he knocked on residents' doors also were invited by the comments of Blount's counsel. During closing argument, Blount's counsel referred to the State's failure to have any police officers testify concerning whether they had knocked on every resident's door to determine what they might have seen or heard. Blount's counsel suggested that the police may not have wanted to find out what was actually seen or heard. Thus, the State's comments that Blount could have called the residents as witnesses to support his charge that the police conspired to hold back the production of evidence was proper in response to Blount's counsel's argument.

■ Blount also argues that during the State's rebuttal argument, the prosecutor impugned his attorney's integrity by suggesting that counsel employed trickery. He contends that the State accused his attorney of trying to divert the jury's attention from the real issues in the case to obtain an acquittal. As a result of this, he contends that he was prejudiced and denied a fair trial. The State maintains that Blount has waived the issue.

Even when considered under the plain error rule, however, we find that the State's comments do not rise to the level of reversible error. A prosecutor is permitted great latitude in closing arguments. (*People v. Lasley* (1987), 158 Ill. App. 3d 614, 511 N.E.2d 661.) The question on review is whether the prosecutor's comments, viewed in light of all the evidence, were a material factor in the conviction or whether, had the comments not been made, would the jury have reached a different result. (*Lasley*, 158 Ill. App. 3d at 625-26.) When viewed in its entirety, we cannot say that, absent the comments, the jury would have reached a different conclusion.

## IV

■ Blount next contends that the circuit court erred in not granting a new trial based on newly discovered evidence. Subsequent to the trial, Dotson informed the court that two additional witnesses had been found, Norma Jean Jones and Arlean Jones. Dotson stated that Norma Jean would testify that Jackson was in her apartment when shots were fired; Arlean would testify that Jackson told her that, at the time of the shooting, he was in Norma Jean's apartment. The State responds that, though Dotson motioned for a new trial based upon allegedly newly discovered evidence, Blount never raised the issue before the circuit court.

The record discloses that neither in his post-trial motion nor in his post-trial argument did Blount raise the issue of newly discovered evidence. Even considering the issue under the plain error doctrine, however, we find that Blount has failed to establish that any error occurred.

The decision to grant or deny a motion for new trial based on newly discovered evidence is within the circuit court's discretion, and the exercise of that discretion should not be disturbed on review except in cases of manifest abuse. (*People v. Chew* (1987), 160 Ill. App. 3d 1082, 513 N.E.2d 1099.) An accused's motion for new trial based on newly discovered evidence must be supported by an affidavit showing his lack of prior knowledge of such evidence and his diligence in obtaining it. (*People v. Gray* (1981), 96 Ill. App. 3d 757, 760, 422 N.E.2d 45.) In addition, the accused must present affidavits of witnesses who would testify regarding the new evidence on retrial unless the lack of such affidavits is sufficiently explained. *Gray*, 96 Ill. App. 3d at 760.

In the instant case, Blount made no request for a new trial based on the newly discovered evidence; neither he nor Dotson filed any affidavits nor gave any reason for their absence. Thus, he has not complied with basic procedural requirements. A movant has a responsibility to obtain a ruling on his motion if he wishes to raise a question thereto on appeal. (*People v. Neal* (1990), 142 Ill. 2d 140, 568 N.E.2d 808; *People v. Schmitt* (1989), 131 Ill. 2d 128, 137, 545 N.E.2d 665.) In this case, Blount failed even to make the motion.

Moreover, the proposed testimony does not satisfy substantive requirements. New evidence must be of such conclusive character that it will probably change the outcome on retrial. (*People v. Jones* (1987), 157 Ill. App. 3d 1006, 511 N.E.2d 1215.) Not only must it be material to the issue and not merely cumulative, but it must also have been discovered after trial and be of such a character that it could not have been discovered prior to trial by exercise of due diligence. *Jones*, 157 Ill. App. 3d at 1024.

Blount has neither demonstrated that the proposed evidence would change the outcome on retrial, nor has he given explanation as to why the witnesses could not have been discovered prior to trial. Thus, because he has failed to satisfy both procedural and substantive requirements, we find that the circuit court properly denied a new trial based on allegedly newly discovered evidence.

## V

Blount further contends that the State failed to disclose state-

ments which were material to the issue of his guilt or innocence. Specifically, Blount alleges that the State was in possession of medical records which would have corroborated his testimony at the motion to suppress that he complained that he was hit in the eye by a policeman. He contends that the State failed to tender the report prior to trial, and also failed to make any reference to the report in its answer to discovery. The circuit court denied defense counsel's request to utilize the report in a reopened hearing to suppress statements or during trial.

On appeal, all reasonable presumptions are in favor of the action of the circuit court and the burden is upon the appellant to overcome such presumption by affirmatively showing the errors charged. (*People v. Henderson* (1985), 136 Ill. App. 3d 1041, 483 N.E.2d 1068.) The existence of error cannot be presumed but must be affirmatively shown of record. (*Henderson*, 136 Ill. App. 3d at 1045.) In the instant case, the State contended that the disputed medical records had indeed been furnished to Blount; the issue of whether the reports actually had been tendered was never resolved. Thus, the presumption before us, based on the circuit court's ruling, is that there was no discovery violation.

To establish a discovery violation which would warrant a new trial, the defendant has the burden of establishing three elements: (1) that the evidence was favorable to him; (2) that the prosecutor failed to disclose the evidence after a specific request; and (3) that the evidence was material. (*People v. Flax* (1986), 147 Ill. App. 3d 943, 954, 498 N.E.2d 667.) We conclude that Blount has not established these elements, and further, that, at best, the medical records offered only corroboration of the fact that Blount complained of mistreatment. The records did not establish that he was mistreated. We note also this alleged error was discovered by Blount during trial. Thus, he have made any proper use of the records to combat the State's or buttress his defense. His argument on this issue must therefail.

## VI

final contention is that the circuit court failed to consider rehabilitative potential and thus erred in sentencing him to 30 imprisonment. The State maintains that the court properly considered the relevant factors in determining the sentence and that the sentence imposed was appropriate.

Absent an abuse of discretion by the circuit court, a defendant's sentence will not be disturbed on review. (*People v. Perruquet* (1977),

68 Ill. 2d 149, 368 N.E.2d 882.) The circuit court is normally in a superior position to make a sound determination as to the punishment to be imposed. (*People v. Cabrera* (1987), 116 Ill. 2d 474, 494, 508 N.E.2d 708.) Though the circuit court must consider defendant's rehabilitative potential in determining what sentence to impose (*People v. Gibbs* (1977), 49 Ill. App. 3d 644, 648, 364 N.E.2d 491), the nature of the crime, protection of the public, deterrence, and punishment also are relevant. *People v. Whitehead* (1988), 171 Ill. App. 3d 900, 908, 525 N.E.2d 1084.

The circuit court in the instant case not only received defendant's pretrial investigation report, but also heard evidence in aggravation and mitigation at the sentencing hearing. Moreover, the circuit court was aware of all of the evidence which had been presented at trial. The circuit court was therefore in the best position to determine what sentence was appropriate. The record before us supports the sentence that was imposed.

Accordingly, the judgment of the circuit court of Cook County is affirmed as to Blount. As to Dotson, the judgment of the circuit court of Cook County is reversed and the cause is remanded for a new trial.

Affirmed in part; reversed and remanded in part.

SCARIANO, P.J., and HARTMAN, J., concur.