THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. BOBBY JOE ANDERSON, Defendant-Appellant.

First District (3rd Division)    No. 1—93—0909

Opinion filed May 17, 1995.

Charles K. Piet, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Latisha Foster, and Cathleen A. Dillon, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE GREIMAN delivered the opinion of the court:

Defendant was found guilty of first degree murder and was sentenced to a term of natural life imprisonment in the shooting death of William Hawkins.

On appeal, defendant claims: (1) he was denied effective assistance of counsel where defense counsel informed the jury of defendant's prior murder conviction; and (2) the trial court abused its discretion in denying defendant's request for a continuance in order to complete discovery. However, we affirm.

Shortly after 11 p.m. on October 16, 1979, William Hawkins, the mayor of Phoenix, Illinois, was shot to death in his driveway while

exiting his car. Phoenix is a small village located in Chicago's southern suburbs. In early September of 1979, the Phoenix police department went on strike in connection with a salary dispute with the village. Defendant was a Phoenix police officer.

Eugene Wright was the only eyewitness to the shooting. At the time of the shooting, Wright was 17 years old. On the afternoon of October 16, 1979, Wright observed defendant driving one of Phoenix's two unmarked police cars with Tony Childs, a Phoenix police lieutenant and a codefendant in the murder of William Hawkins, in the passenger seat.

Wright and a friend, Michael Stoudemire, had been drinking beer in a local pool room throughout the afternoon and were on their way to a liquor store to buy more beer when they saw defendant and codefendant Childs in the unmarked police car. They purchased more liquor and went to Stoudemire's house to watch the World Series.

After the game ended, the two retired to the backyard of the house and smoked a marijuana cigarette. The Stoudemire yard was located across an alley from Mayor Hawkins' driveway. Standing in the yard, Wright noticed Mayor Hawkins' car pull into the driveway. As Hawkins was exiting his vehicle, Wright observed a second car, which he recognized as the unmarked police car he had seen defendant driving earlier that day, enter the driveway. Wright recognized the car's driver as defendant and its passenger as codefendant Childs.

Childs stepped from the vehicle and Wright heard him shout toward Hawkins. Childs then raised a rifle and fired several shots at Hawkins. Wright saw the mayor fall to the ground, Childs get back in the car, and defendant drive away. Wright remained in the yard and he saw police, paramedics, and neighbors gather in the Mayor's driveway. Among the officers at the scene were defendants Anderson and Childs.

Wright was not approached about the incident, nor did he volunteer testimony, until 1983 when he was questioned by Cook County sheriff's police officer Houlihan while in custody at Cook County jail on a burglary charge. Officer Houlihan again questioned Wright in 1986 and in 1991, and in 1992 Wright formally testified in a Federal proceeding,[1] identifying Anderson and Childs as Mayor Hawkins' killers.

On December 11, 1986, FBI Agents Hardman and Snow ques-

---

[1] The Federal proceeding concerned the Federal Bureau of Investigation's (FBI's) investigation of public corruption in the south suburbs, including Phoenix, Illinois. No Federal charges resulted from the investigation of Hawkins' murder.

tioned defendant while he was in custody for the murder of his girlfriend. Defendant confessed to his involvement in the Hawkins murder on this occasion. Thereafter, during two subsequent interviews on December 12 and 15, defendant again confessed before FBI agents, Cook County sheriff's deputies, and Cook County Assistant State's Attorney Scott Arthur. Defendant was not charged with the murder of Mayor Hawkins until June of 1992.

Before trial, defendant moved for a continuance, alleging that discovery had not been completed. The motion was denied.

In an oral motion *in limine*, defendant requested that the State be barred from mentioning defendant's prior murder conviction to impeach him should defendant choose to testify or, in the alternative, that the State at least be precluded from mentioning the nature of the prior offense. The motion was denied in its entirety.

During opening statements, defense counsel stated that defendant had been convicted for the murder of his girlfriend and was currently serving a sentence for that conviction. Defense counsel made or elicited several additional references to that prior conviction, including one made in counsel's closing argument. During trial, the court questioned defendant about his decision not to testify. The court also questioned defendant as to whether he understood and agreed with the decision to advise the jury of the prior murder conviction. Defendant responded that he understood and had consented in both instances.

Defendant and codefendant Childs were tried concurrently but with separate juries. Defendant was convicted of first degree murder and codefendant Childs was acquitted.

■ Defendant first contends he was denied effective assistance of counsel where defense counsel informed the jury that he had a prior conviction for the murder of his girlfriend. To prevail on a claim of ineffective assistance of counsel, a defendant must show that counsel's representation fell below an objective standard of reasonableness, as measured by reference to prevailing professional standards, and that the quality of defendant's representation so prejudiced the defendant as to deny him a fair trial. *Strickland v. Washington* (1984), 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2064; *People v. Albanese* (1984), 104 Ill. 2d 504, 473 N.E.2d 1246.

A reviewing court should indulge a strong presumption that the challenged action of counsel falls within the wide range of reasonable professional assistance. *People v. Gonzalez* (1992), 238 Ill. App. 3d 303, 331, 606 N.E.2d 304, 324.

It bears repeating that a defendant is entitled to competent, not perfect, representation, and the fact that in retrospect a tactic proved

unsuccessful does not demonstrate incompetence. (*Gonzalez*, 238 Ill. App. 3d at 331, 606 N.E.2d at 324.) In examining counsel's performance, a reviewing court should not extend its inquiry into areas involving the exercise of judgment, discretion, trial tactics or strategy. *Gonzalez*, 238 Ill. App. 3d at 331-32, 606 N.E.2d at 325.

Defendant argues that admission of the prior conviction was prejudicial and denied him a fair trial. The State argues that, even conceding prejudice, defendant cannot claim ineffective assistance where (1) counsel's admission of the earlier conviction was a matter of trial strategy and (2) was one which was fully understood and consented to by defendant.

The State correctly notes that defendant's pretrial motion seeking to bar the State from impeaching defendant with the prior conviction, or in the alternative from mentioning the nature of the conviction, was denied by the trial court. Therefore, the State argues, faced with the prospect that defendant would be impeached with the prior conviction if he testified, it was reasonable strategy to inform the jury "up front" in anticipation of defendant's testimony.

This is a common enough strategy, and one which would justify the introduction of the prior conviction. However, though initially plausible, the State's strategy theory does not explain the subsequent and repeated mention of the prior conviction after it was determined that defendant would not take the stand.

However, the record supports another reasonable trial strategy that explains the later disclosures. The record indicates that counsel was attempting to show that defendant's confession to the Hawkins murder, which included naming Childs and other higher ranking Phoenix police officers, was in exchange for concessions in his treatment in connection with the murder for which he had been previously convicted as to sentencing and transfer from Stateville Penitentiary to the Metropolitan Correctional Center, a Federal facility. The inference to be drawn is that the confession, because it was bargained for or induced, is unreliable. Accordingly, additional references to the prior conviction were necessary to challenge the legitimacy of defendant's confession.

The following colloquy concerning defendant's confession between defense counsel, Mr. Rago, and the prosecutor, Mr. Linehan, which took place during closing argument, bears this out:

"MR. RAGO: Why would the most damning words that can come out of a person's mouth be uttered? Ladies and gentleman, my client went to the penitentiary after September of 1986.

Mr. LINEHAN: Objection, Judge.

MR. RAGO: The reasonable inference is, why, in December. He

has already spent time in the Stateville Penitentiary. He was a cop. You know what the environmental factors are in the penitentiary for an ex-cop.

Mr. LINEHAN: Objection."

■ Each time counsel sought to explore this possibility at trial, the court would intervene. Counsel's attempt to challenge the reliability of defendant's confession, by far the most damaging evidence of guilt, was arguably sound trial strategy. That the strategy proved unsuccessful in no way suggests ineffective representation. Errors in judgment or trial strategy do not establish incompetence (*People v. Eddmonds* (1984), 101 Ill. 2d 44, 70, 461 N.E.2d 347), "even if clearly wrong in retrospect" (*United States v. Yancey* (7th Cir. 1987), 827 F.2d 83, 90).

Counsel's decision to mention the prior conviction was not only permissible trial strategy, but was strategy which was discussed with, and consented to, by defendant. The trial court made a point of asking defendant if he concurred with the decisions not to testify and to inform the jury of his prior conviction. Defendant unequivocally expressed his agreement with those decisions.

Where a defendant knowingly and intelligently consents to defense counsel's strategy, he normally cannot claim ineffective assistance of counsel for the actions of defense counsel in furtherance of that strategy. (*People v. Fair* (1994), 159 Ill. 2d 51, 636 N.E.2d 455.) There is nothing to suggest that defendant's consent was not knowing and intelligent, particularly given the fact that defendant was acquainted with the trial process, having been both a police officer and prison guard.

■ Defendant next argues that the trial court abused its discretion in denying his requests for continuance. Whether to grant a continuance is within the sound discretion of the trial court (*People v. Young* (1989), 128 Ill. 2d 1, 27, 538 N.E.2d 453), and a reviewing court will not interfere with the trial court's grant or denial of a continuance absent clear abuse of discretion. *People v. Collins* (1985), 106 Ill. 2d 237, 281, 478 N.E.2d 267.

■ Defendant made two pretrial motions for continuance alleging incomplete discovery and reiterated this request on the first day of trial. The trial court denied each of defendant's motions. Defendant contends that he was prejudiced by the denials.

This action is unusual in that 13 years separate the crime and the indictment. Defendant was afforded six months to prepare for trial, a period, he argues, insufficient where the prosecution had 13 years within which to prepare. Though the numbers suggest inequality, the fact is that almost nothing of evidentiary value happened or

was discovered in the interim between crime and trial. The State did not use the 13 years to amass a mountain of evidence for its prosecution of defendant. Their case was made in 1986, when Wright identified Anderson and Childs, and when defendant first confessed.

Also, defendant fails to point to specific manifestations of prejudice caused by the trial court's ruling. Defendant maintains that discovery was not completed, yet the items specifically requested by defendant, photographs of Mayor Hawkins' house and driveway, an audiotape pertaining to codefendant Childs, and transcripts of a related Federal proceeding, were either tendered by the State or were immaterial to the issue of defendant's innocence. Further, the trial court entertained extensive arguments from both sides on each motion for continuance and twice barred the State from admitting evidence and testimony which spoke to the murder weapon in this case because it found discovery violations by the State.

To establish a discovery violation which would warrant a new trial, a defendant bears the burden of establishing (1) that the evidence was favorable to him, (2) that the prosecutor failed to disclose the evidence after a specific request, and (3) that the evidence was material. (*People v. Blount* (1991), 220 Ill. App. 3d 732, 745, 580 N.E.2d 1381.) Defendant is unable to meet this burden or show the requisite prejudice to sustain a claim of abuse of discretion.

Because defendant is unable to show ineffective assistance of counsel or abuse of discretion, we affirm his conviction for first degree murder.

Affirmed.

TULLY and CERDA, JJ., concur.