NOTICE
Decision filed 11/17/25. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2025 IL App (5th) 240495-U

NO. 5-24-0495

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Macon County. |
| | ) | |
| v. | ) | No. 18-CF-1124 |
| | ) | |
| LAMONT D. WRIGHT, | ) | Honorable |
| | ) | Phoebe S. Bowers, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE CATES delivered the judgment of the court.
Justices Moore and Hackett[*] concurred in the judgment.

**ORDER**

¶ 1   *Held*:   The defendant's convictions on two counts of domestic battery arising from the same act violate the one act-one crime doctrine and the cause is remanded to the trial court with directions to determine which of the two counts of domestic battery must be vacated. The defendant failed to establish that his trial counsel was ineffective for failing to move to exclude evidence of the defendant's prior convictions. In all other respects, the defendant's convictions and sentences are affirmed.

¶ 2   Following a jury trial, the defendant, Lamont D. Wright, was convicted of one count of aggravated criminal sexual assault, two counts of aggravated domestic battery, and two counts of domestic battery with a prior domestic battery conviction, all involving the same victim. The defendant was also convicted of one count of resisting a peace officer. On appeal, the defendant

_____

[*]Justice Welch was originally assigned to the panel in this case. Justice Hackett was later substituted on the panel and has read the briefs and listened to the recording of oral argument

1

claims that his two convictions for domestic battery cannot stand where the jury was only asked to determine a single charge of domestic battery as the State did not differentiate or apportion the evidence between the two counts. In the alternative, the defendant claims that the two domestic battery convictions must be vacated under the one act-one crime doctrine. The defendant also claims that he received ineffective assistance of counsel because his trial counsel did not move to exclude the admission of the defendant's prior convictions.

¶ 3     This is the defendant's second appeal. In the previous appeal, our colleagues in the Fourth District remanded the case to the trial court for a preliminary inquiry into the defendant's claims of ineffective assistance of counsel pursuant to *People v. Krankel*, 102 Ill. 2d 181 (1984). Because the case was remanded for a *Krankel* inquiry, the defendant's other arguments were not considered. *People v. Wright*, 2023 IL App (4th) 210301-U, ¶¶ 26-27. Following the *Krankel* proceedings, the trial court found that the defendant's claims of ineffective assistance of counsel were without merit. This case comes to us for consideration of the defendant's remaining claims of error. An overview of the background and procedural history pertinent to the issues on appeal follows.

¶ 4                                    I. BACKGROUND

¶ 5     On August 8, 2018, the defendant was charged by information with two counts of aggravated criminal sexual assault, two counts of aggravated domestic battery, one count of aggravated battery, and two counts of domestic battery with a prior domestic battery conviction. All of these charges involved the defendant's girlfriend, A.K. The defendant was also charged with one count of resisting a peace officer and one count of criminal damage to state supported property. The criminal damage to property charge was later dismissed by the State.

¶ 6     The two counts of domestic battery are the subjects of this appeal. In count VI, the State alleged that on or about August 2, 2018, through August 3, 2018, the defendant committed the

offense of domestic battery with a prior domestic battery conviction in that the defendant "knowingly and without legal justification caused bodily harm to A.K. ***, a family or household member of the defendant, in that the said defendant struck, grabbed, pushed and pulled A.K.," and the defendant had been previously convicted of domestic battery (720 ILCS 5/12-3.2(a)(1) (West 2018)). In count VII, the State alleged that on or about August 2, 2018, through August 3, 2018, the defendant committed the offense of domestic battery with a prior domestic battery conviction in that the defendant "knowingly and without legal justification made physical contact of an insulting or provoking nature with A.K. ***, a family or household member of the defendant, in that the said defendant struck, grabbed, pushed and pulled A.K.," and the defendant had been previously convicted of domestic battery (720 ILCS 5/12-3.2(a)(2) (West 2018)).

¶ 7     The defendant's trial began on September 23, 2019. At trial, the State presented evidence that on August 2, 2018, the victim, A.K., was engaged to the defendant. She and her two children from a prior relationship lived with the defendant and his daughter, also from a prior relationship. A.K. testified that on the night of August 2, 2018, the defendant questioned her and accused her of being unfaithful. A.K. recalled that when she denied the accusations, the defendant repeatedly punched her, strangled her, pushed her down, and threw water on her face. A little later that night, the defendant held scissors under her chin and threatened her. The defendant then sexually assaulted A.K. both anally and orally. After the defendant went to sleep, A.K. left with her children and went to the police station. Subsequently, A.K. went to the hospital, where she was treated for a broken finger and other injuries. The State presented testimony from the attending emergency room nurse and submitted photographs as evidence to show that A.K. had a swollen finger, bruising on her face, arms, and clavicles, and a scratch on her neck. A sexual assault examination

3

was also performed on A.K. The State's forensic expert testified that sperm found on the victim's anal swab matched the defendant's DNA profile.

¶ 8    The State also presented evidence regarding the charge of resisting a peace officer. Officer Stephen Feurer, a member of the Decatur Police Department, testified that after the defendant was taken into custody and placed in an interview room, he became visibly upset. The defendant began screaming and slamming his head into the door of the interview room. Officer Feurer and other officers escorted the defendant to a police car to transport him to the jail. The defendant pushed against the officers, fell to the ground, and did not comply with the officers' verbal commands. Once inside the police car, the defendant continued to hit his head on the divider cage and the vehicle door, causing a bleeding wound to his forehead. The defendant was taken to the intake area of the Macon County jail. He was then taken to the hospital by ambulance for treatment of his injuries.

¶ 9    During a break in the State's evidence, and outside the presence of the jury, the defense advised the trial court that the defendant intended to testify. Prior to the defendant's testimony, the trial court advised the defendant that the decision to testify belongs to the defendant, and the defendant alone, even if defense counsel feels differently. Defense counsel told the trial court that he had counseled his client regarding his right to testify. In doing so, defense counsel stated: "we are of the understanding that we got the ten-year rule, the crimes of moral turpitude, and I will be fronting the aggravated battery conviction, the violation of order of protection conviction, and the retail theft conviction. We will, however, object as anything else being more prejudicial than probative." Defense counsel was referring to the defendant's prior conviction for aggravated battery, failure to comply with an order of protection, and the conviction for retail theft. Upon inquiry from the court, defense counsel indicated, "Me and my client have planned on discussing

4

those as part of his direct testimony." This conversation occurred on the record, with the defendant present, and outside of the presence of the jury. During direct examination, the defendant testified that he and A.K. lived together. The couple agreed that the defendant would work and that A.K. would stay home with the children. The defendant admitted that on the evening of August 2, 2018, he and A.K. had a verbal argument. The defendant denied that he beat or sexually assaulted A.K. During further questioning by defense counsel, the defendant acknowledged that he had made some mistakes in his life. He stated that he changed his life and had gotten full custody of his daughter. The defendant further acknowledged his prior convictions for aggravated battery to a peace officer and a violation of an order of protection that occurred about eight years prior, and a conviction for retail theft that occurred about seven years prior.

¶ 10 At the conclusion of the defendant's testimony and outside the presence of the jury, the State informed the trial court that the defendant had misstated the dates of his convictions. The State requested that certified copies of the defendant's convictions be admitted into evidence. In lieu of the admission of the records, the State and defense counsel agreed that the trial court could read the exact dates of the defendant's prior convictions to the jury. The trial court then informed the jury that the defendant was convicted of aggravated battery on March 17, 2011, failure to comply with an order of protection on December 2, 2013, and retail theft on September 11, 2011.

¶ 11 Before closing arguments, a jury instruction conference was held. The instructions tendered by the State, related to the domestic battery charges, combined the issues of "bodily harm" and "physical contact of an insulting or provoking nature" into a single jury instruction. The jury was provided with only one set of verdict forms related to the charges of domestic battery. Defense counsel did not object to the jury instructions or the verdict forms, and he offered no alternate instructions.

5

¶ 12 During closing arguments, the State told the jury that the defendant was charged with one count of domestic battery. Later in the argument the State said that the first proposition was, "that the defendant knowingly caused bodily harm or made physical contact of an insulting or provoking nature with [A.K.]. We've talked about both of those things, and I'd submit to you that we've proven that he caused bodily harm and made contact of an insulting or provoking nature." Defense counsel argued that the defendant had no injuries to the defendant's knuckles, despite A.K.'s accusations of having been beaten. The three children who would have been present were not interviewed by the police, and no testimony was provided by them. Defense counsel was critical of the police department and its failure to fully investigate the two versions of events, and asked the jury to find the defendant not guilty on all counts except the obstructing count.

¶ 13 After closing arguments, the trial court gave the following instruction on the charge of domestic battery: "A person commits the offense of domestic battery when he knowingly and by any means causes bodily harm to or makes physical contact of an insulting or provoking nature with any family or household member." The trial court further instructed that to sustain the charge of domestic battery, the State must prove the following: "First, that the defendant knowingly caused bodily harm to or made physical contact of an insulting or provoking nature with [A.K.]; and second, that [A.K.] was then a family or household member to the defendant." The jury was given a full set of instructions for each count, except domestic battery. The jury was only given a single set of verdict forms for domestic battery, one for "guilty of Domestic Battery" and one for "not guilty of Domestic Battery."

¶ 14 The jury deliberated and reached verdicts on all counts. The jury found the defendant not guilty of aggravated criminal sexual assault (count I - penis to mouth) and aggravated battery (count V - scissors). The jury found the defendant guilty of aggravated criminal sexual assault

6

(count II - penis to anus), two counts of aggravated domestic battery (counts III and IV), and one count of resisting a peace officer (count IX). The jury also returned a guilty verdict for both offenses of domestic battery with a prior domestic battery conviction (counts VI and VII).

¶ 15    On November 12, 2019, the trial court sentenced the defendant to 15 years in the Illinois Department of Corrections (IDOC) on count II, and 7 years in IDOC on count III, to run consecutive to count II. The court sentenced the defendant to seven years on count IV, and that sentence was to run concurrent with count III. The court then sentenced the defendant to three years on count VI (domestic battery involving bodily harm) and three years on count VII (domestic battery involving contact of an insulting or provoking nature), and these terms were to run concurrent with counts III and IV.

¶ 16                                II. ANALYSIS

¶ 17    On appeal, the defendant initially claims that the two convictions for domestic battery with a prior domestic battery conviction cannot stand where the jury was only asked to determine a single charge of domestic battery and the State did not differentiate or apportion the evidence between domestic battery causing bodily harm (count VI) and domestic battery involving physical contact of an insulting for provoking nature (count VII). He argues, in the alternative, that the convictions should be vacated under the one act-one crime doctrine. The State agrees that the two convictions for domestic battery violated the one act-one crime doctrine. However, the State argues that only one of the defendant's convictions should be vacated and asserts that count VI (bodily harm) should be affirmed and count VII (physical contact of an insulting or provoking nature) should be vacated.

7

¶ 18                        A. One Act-One Crime Doctrine

¶ 19     The defendant acknowledges that he failed to raise these issues in the trial court and thus failed to preserve them for appellate review. The State agrees that the issues were forfeited but concedes that a violation of the one act-one crime doctrine is reviewable under the second prong of the plain-error doctrine. See *People v. Smith*, 2019 IL 123901, ¶ 14; *People v. Campos*, 2019 IL App (1st) 152613, ¶ 35. Under the plain-error doctrine, we must first determine whether any error occurred. *Smith*, 2019 IL 123901, ¶ 14; *People v. Herron*, 215 Ill. 2d 167, 187 (2005). Whether a conviction should be vacated under the one act-one crime doctrine presents a question of law that is reviewed *de novo*. *Campos*, 2019 IL App (1st) 152613, ¶ 36.

¶ 20     "The one-act, one-crime rule prohibits multiple convictions carved from the same physical act." *Campos*, 2019 IL App (1st) 152613, ¶ 36. To determine whether simultaneous convictions violate the one act-one crime doctrine we must first determine if the offenses stem from a single act or multiple acts. *Campos*, 2019 IL App (1st) 152613, ¶ 36. If the offenses arise from multiple acts, then we must look at whether lesser included charges exist. *Campos*, 2019 IL App (1st) 152613, ¶ 36. The charging instrument must indicate that the State intended to treat a defendant's conduct as multiple acts and not a single act to sustain multiple convictions. *People v. Crespo*, 203 Ill. 2d 335, 345 (2001). Additionally, the one act-one crime doctrine provides that judgment and sentence may be entered only on the most serious offense. *People v. Smith*, 233 Ill. 2d 1, 20 (2009). When determining the seriousness of the offense, we may look at the relative punishments prescribed by the legislature. *People v. Artis*, 232 Ill. 2d 156, 165 (2009). However, when it cannot be determined which of the convictions is the more serious offense, the cause will be remanded to the trial court for the determination. *Artis*, 232 Ill. 2d at 177.

¶ 21    In the case at bar, the defendant was charged with and convicted of two counts of domestic battery with a prior domestic battery conviction. Count VI alleged that the defendant caused bodily injury in that he "struck, grabbed, pushed and pulled" the victim. Count VII alleged that the defendant made physical contact of an insulting or provoking nature in that he "struck, grabbed, pushed and pulled" the victim. Initially, we consider whether the offenses stem from multiple acts or a single act. If there were separate acts, then we must determine if there are lesser-included offenses. Here, the charging documents show that count VI and count VII arose from the same underlying conduct. The charging instrument does indicate that the State intended to treat the conduct of the defendant as a continuous act. Additionally, the offenses charged against the defendant do not include lesser offenses. Next, we consider whether one of the convictions is for a "more serious" offense. Domestic battery causing bodily injury and domestic battery involving physical contact of a provoking or insulting nature are both Class 4 felonies as charged, and both carry the same range of punishment. Given that, we find that the trial court erred in entering convictions on both count VI and count VII, and therefore one of the convictions must be vacated. Accordingly, we remand this case to the trial court with directions to determine which of the two convictions for the offense of domestic battery with a prior domestic battery conviction should be vacated and to correct the mittimus accordingly.

¶ 22                    B. Ineffective Assistance of Counsel

¶ 23    Next, the defendant claims that he was denied the effective assistance of trial counsel where his counsel failed to move to exclude the defendant's prior convictions where the admission of those convictions was unduly prejudicial. The State disagrees, arguing that defense counsel's decision to introduce the defendant's prior convictions through the defendant's direct testimony

9

was objectively reasonable when faced with the prospect of the State eliciting that evidence for purposes of impeachment during cross-examination.

¶ 24    To prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate that his counsel's representation fell below an objective standard of reasonableness and that but for counsel's unprofessional representation, there is a reasonable probability that the result of the proceedings would have been different. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances." *Strickland*, 466 U.S. at 688. Judicial scrutiny of counsel's performance must be highly deferential. *Strickland*, 466 U.S. at 689. When faced with the possibility that a defendant would be impeached with a prior conviction if he testified, it is reasonable strategy to inform the jury of the conviction in anticipation of a defendant's testimony. *People v. Anderson*, 272 Ill. App. 3d 566, 570 (1995).

¶ 25    In this case, the defendant elected to testify in his own defense at his trial. The record shows that the defendant and his trial counsel had a discussion about the defendant's prior convictions being introduced in his direct testimony. During trial and outside the presence of the jury, defense counsel explicitly stated to the court that both counsel and the defendant were "of the understanding that we got the ten-year rule, the crimes of moral turpitude, and I will be fronting the aggravated battery conviction, the violation of order of protection conviction, and the retail theft conviction. We will, however, object as anything else being more prejudicial than probative." Here, defense counsel made it clear that the defense strategy was to "front" the evidence of the potentially damaging prior convictions, rather than to allow the State to impeach the defendant with that evidence during cross-examination. Defense counsel's decision not to move for exclusion of the prior convictions was based upon the defendant's decision to testify on his own behalf, and

10

the defendant was present when these representations were made to the court. There is no indication from the record that the defendant objected to the trial strategy implemented by his trial counsel at that point in the proceedings. Additionally, the trial court admonished the jury that the defendant's prior convictions could only be considered for the purpose of assessing the defendant's credibility. After a thorough review of the record, we find that the defendant's claim of ineffective assistance of trial counsel is without merit.

¶ 26                                III. CONCLUSION

¶ 27    For the reasons stated, we find that the defendant's convictions on the charges of domestic battery causing bodily harm and domestic battery based upon contact of a provoking or insulting nature violate the one act-one crime doctrine. Because it cannot be determined which of the domestic battery convictions is the more serious offense, we remand the case to the trial court with directions to determine which of the convictions must be vacated and to correct the mittimus accordingly. The defendant's convictions and sentences are otherwise affirmed.

¶ 28    Affirmed in part and vacated in part; cause remanded with directions.